EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mercedes Otero de Ramos<br>    Demandante<br><br>          v.<br><br>Hon. Manuel Díaz Saldaña en su<br>carácter oficial como Secretario<br>de Hacienda; Estado Libre<br>Asociado de Puerto Rico<br>    Demandado | Certiorari<br><br>2002 TSPR 65<br><br>156 DPR \_\_\_\_ |

Número del Caso: CC-2000-139


Fecha: 14/mayo/2002


Tribunal de Circuito de Apelaciones:
                              Circuito Regional I


Juez Ponente:
                    Hon. Liana Fiol Matta


Oficina del Procurador General:
                              Lcda. María Adaljisa Dávila Vélez
                              Procuradora General Auxiliar


Abogados de la Parte Demandante-Recurrida:
                              Lcdo. Marcos A. Ramírez Lavandero
                              Lcdo. Eduardo A. Vera Ramírez


Materia: Sentencia Declaratoria y Cobro de Dinero


        Este documento constituye un documento oficial del Tribunal Supremo que
        está sujeto a los cambios y correcciones del proceso de compilación y
        publicación oficial de las decisiones del Tribunal. Su distribución
        electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mercedes Otero de Ramos

     Demandante

        vs.                           CC-2000-139       Certiorari

Hon. Manuel Díaz Saldaña
en su carácter oficial como
Secretario de Hacienda;
Estado Libre Asociado de
Puerto Rico

     Demandado

Opinión del Tribunal emitida por el Juez Presidente señor Andréu García

San Juan, Puerto Rico, a 14 de mayo de 2002

Debemos determinar si los funcionarios nombrados por el Poder Ejecutivo que se desempeñan en sus puestos por más de un cuatrienio, deben recibir el beneficio dispuesto en el Artículo 3 de la Ley Núm. 125, 3 L.P.R.A. § 703(b) respecto a cada uno de los nombramientos extendidos por el Gobernador o Gobernadora.

I

La recurrida, Dra. Mercedes Otero de Ramos, se desempeñó como Administradora de Corrección del Estado Libre Asociado de Puerto Rico (E.L.A.), por dos cuatrienios consecutivos, hasta el año 1992. En junio de ese año, el entonces Gobernador del E.L.A., don Rafael Hernández Colón, le concedió

una compensación final equivalente a doce meses de sueldo, amparándose en la Ley Núm. 125 de 10 de junio de 1967, 3 L.P.R.A. § 703(b) (Ley Núm. 125). En julio de 1992, el Departamento de Hacienda hizo el pago correspondiente.

**El 18 de enero de 1995, el peticionario, Secretario de Hacienda, cursó una carta a la recurrida, solicitándole la devolución de la mitad de la compensación otorgada. Alegó que el Gobernador no tenía facultad para conceder una compensación mayor al equivalente de seis meses del sueldo del funcionario que cesa en el servicio público y que a la recurrida se le pagó, en exceso y de forma indebida, una suma adicional equivalente a otros seis meses de sueldo. La recurrida se negó a devolver el dinero reclamado y el 10 de abril de 1995, presentó una Solicitud de Sentencia Declaratoria ante el Tribunal de Primera Instancia.**

**El 27 de junio de 1996, dicho tribunal dictó sentencia mediante la cual resolvió que la recurrida no tenía derecho a la totalidad de la compensación recibida. El tribunal determinó que la concesión de una compensación equivalente a doce meses de sueldo fue un acto ultra vires del Gobernador, ya que la Ley Núm. 125, supra, dispone que la compensación final no será "en ningún caso" mayor del equivalente a seis meses del sueldo recibido por el funcionario en su puesto.**

**Inconforme, la recurrida apeló ante el Tribunal de Circuito de Apelaciones. Específicamente, solicitó que se declarara la validez y legitimidad del pago que le fue concedido por el Gobernador, e imputó error al tribunal de instancia al concluir que al cesar en su cargo dicha funcionaria, sólo tiene derecho a una compensación final equivalente a un máximo de seis meses de sueldo, aún cuando haya ocupado dicho cargo por dos cuatrienios consecutivos. Solicitó en la alternativa, se declarase que dicho pago se fundamentó en un error razonable de derecho, por cuya razón no procedería su devolución.**

El 22 de diciembre de 1999, el Tribunal de Circuito de Apelaciones dictó sentencia, mediante la cual revocó la sentencia apelada. Determinó el tribunal que la recurrida se desempeñó como Administradora de Corrección durante dos cuatrienios consecutivos, razón por la cual el Gobernador

autorizó el pago de una compensación que evidentemente equivale a la licencia por vacaciones que, de otro modo, ella hubiera podido disfrutar durante cada término en el cual desempeñó sus funciones; que esa suma fue otorgada en el ejercicio de la discreción que la propia ley le otorga al Gobernador y en consideración además, a otros factores relacionados con el desempeño de las funciones del cargo de Administrador de Corrección. Por lo tanto concluyó, conforme al propósito e intención de la Ley Núm. 125, que el pago realizado a la recurrida fue válido.

Comparece ante nos el Secretario de Hacienda, representado por el Procurador General, y alega que incidió el Tribunal de Circuito de Apelaciones al rechazar la determinación del tribunal de instancia de limitar a seis meses de sueldo la compensación a que tiene derecho la recurrida y al descartar la aplicación de Hernández Agosto v. Romero Barceló, 112 D.P.R. 407 (1982) a los hechos de este caso.

II

**La controversia en el caso de autos se circunscribe a determinar si bajo la Ley Núm. 125, supra, el Gobernador podía otorgarle a la recurrida, que ostentó su posición por dos cuatrienios consecutivos, una compensación final equivalente al sueldo por doce meses.**

Cuando interpretamos las leyes, debemos siempre acudir primero al texto, ya que si éste es claro y libre de ambigüedad, no debe ser menospreciado bajo el pretexto de cumplir su espíritu. Véase Artículo 14 del Código Civil, 31 L.P.R.A. § 14; Cuevas Santiago v. Ethicon Division of Johnson and Johnson, res. 30 de junio de 1999, 99 TSPR 107.

No obstante, la literalidad de una ley puede ser ignorada por los tribunales cuando ella es claramente contraria a la verdadera intención o propósito legislativo, según tal propósito o intención pueda surgir de la totalidad del estatuto o de la totalidad de la sección envuelta. Véase, Pueblo v. Zayas Rodríguez, res. el 17 de febrero de 1999, 99 TSPR 15.

Todas las leyes, aun las clarísimas, requieren interpretación. Cuando existe alguna ambigüedad, el tribunal debe rechazar una interpretación literal y forzada de un texto legal que conduzca a un resultado que no puede

haber sido el que intentó el legislador. La letra de la ley no debe ser seguida ciegamente en casos que no caen dentro de su espíritu y fin. Íd.

Al interpretar las leyes, los tribunales debemos siempre considerar los propósitos perseguidos por la Asamblea Legislativa, para atribuir a la legislación un sentido que asegure el resultado que se quiso obtener. La obligación fundamental de los tribunales es imprimirle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley. El fin principal de la interpretación estatutaria es descubrir la intención del legislador y su propósito social para hacer que prevalezca este propósito y evitar interpretaciones que conduzcan a resultados irrazonables. Véase, Artículo 19 del Código Civil, 31 L.P.R.A. § 19; Véase además, Irizarry v. Johnson and Johnson Consumer Products Co., res. el 27 de enero de 20000, 2000 TSPR 15; Piñero González v. AAA, res. el 23 de octubre de 1998, 98 TSPR 140; Dorante v. Wrangler, res. el 21 de abril de 1998, 98 TSPR 50.

### III

Como regla general, el personal del Gobierno del Estado Libre Asociado de Puerto Rico goza, de manera legislada, del derecho a acumular ciertos beneficios marginales como lo son las licencias por vacaciones y las licencias por enfermedad, incluyendo las disposiciones vigentes sobre días feriados. No obstante, ciertos funcionarios del Poder Ejecutivo, los cuales son nombrados por el Gobernador[1], con el consejo y consentimiento del Senado, no tienen derecho a acumular ni disfrutar esas licencias que han establecido "La Ley de Personal del Servicio Público" y otras leyes especiales para los empleados y funcionarios públicos. Por consiguiente, al momento de su desvinculación del servicio público, no procede ni el disfrute de dichas licencias ni el pago global a que tienen derecho los otros servidores públicos cobijados por las leyes de personal.

La Ley Núm. 125 y en específico el Artículo 3, 3 L.P.R.A. § 703(b), fue promulgada con el propósito de extender a esos funcionarios los beneficios a los cuales de otro modo, no tienen derecho. A esos fines, el

mencionado estatuto autorizó al Gobernador a reglamentar lo relativo a la concesión y el disfrute de licencias, y al pago final por vacaciones acumuladas de los funcionarios de la rama ejecutiva nombrados por él. Véase Ley Núm. 125, supra, 1967 L.P.R.A. 401. Siendo dicho estatuto uno de carácter remedial con el propósito de hacer justicia a esta clase de funcionarios, tenemos el deber de interpretarlo liberalmente a favor de éstos. Calderón v. Adm. de Sistemas de Retiro, 129 D.P.R. 1020 (1992).

La Constitución del Estado Libre Asociado establece que el Gobernador ejercerá su cargo por el término de cuatro años. Constitución del ELA, Art. IV § 3. Dentro de las facultades y deberes del Gobernador durante su período de incumbencia está la de nombrar a todos los funcionarios para cuyo nombramiento esté facultado. Íd, Art. IV § 4.

**El Artículo 3 de la Ley Núm. 125, en su parte pertinente, dispone lo siguiente:**

> El Gobernador reglamentará todo lo relativo a la concesión y disfrute de licencias y la cuantía del pago de compensación final, incluyendo el pago a los beneficiarios en caso de muerte, a los funcionarios nombrados por él, con excepción de los miembros de la Judicatura, los fiscales, procuradores y registradores de la propiedad. A los efectos del pago de compensación final, que en ningún caso excederá el equivalente a seis meses de sueldo, el Gobernador tomará en consideración, entre otros, factores tales como las necesidades del servicio, la naturaleza de las funciones desempeñadas, y los créditos de licencia de vacaciones acumuladas en empleos anteriores en el Gobierno y no disfrutada al pasar a ocupar puestos de nombramiento por el Gobernador.
>
> Los Presidentes de las Cámaras Legislativas reglamentarán lo relativo a los funcionarios y empleados de la Asamblea Legislativa, en lo concerniente a la concesión y disfrute de licencias, y en lo concerniente al pago de compensación final se ajustarán a lo dispuesto en el Artículo 2 de esta ley.

Una interpretación literal de esta disposición, en el sentido de que el límite de seis meses se impone no obstante los cuatrienios servidos, nos llevaría a un resultado patentemente irrazonable, que no puede ser el deseado por el Legislador. Desde la adopción de la Ley Núm. 125 en 1967, los distintos gobernantes del Estado Libre Asociado de Puerto Rico han puesto en vigor

---

[1] 3 L.P.R.A. § 703.

sus disposiciones[2] y en el ejercicio de su amplia discreción, el factor común ha sido, como parte del carácter remedial o reparador del estatuto, compensar a esos funcionarios por la licencia de vacaciones no disfrutada ofreciéndoles un beneficio equivalente, para reconocer su esfuerzo y dedicación al servicio público, ponderando estos aspectos junto a otros factores como necesidades del servicio, la naturaleza de las funciones desempeñadas e <u>inclusive los créditos de anteriores licencias que no fueron disfrutadas</u> por motivo de pasar a ocupar el puesto en cuestión.

Ciertamente, la ley limita a seis meses la compensación que pueda recibir un funcionario ejecutivo al amparo de la mencionada disposición, pero ello no tiene el alcance que describe la opinión disidente, sino una explicación mucho más simple.  El Legislador contempló imponer como límite <u>el máximo del equivalente de seis meses de sueldo</u>, por cada uno de los <u>períodos de incumbencia del gobernante</u>, que equivale exactamente a lo que tendría derecho a recibir por <u>concepto de vacaciones</u> (solamente de <u>vacaciones regulares</u>) cualquier funcionario público que se haya desempeñado en su puesto por un término equivalente a aquél para el cual se eligen los gobernantes en Puerto Rico, esto es, <u>cuatro años</u>.

La única interpretación razonable al considerar el carácter remedial del estatuto de marras, es que enmarquemos la ley dentro del término de un <u>cuatrienio</u>.  El Legislador, al momento de promulgar la disposición bajo estudio, no proyectó un período de incumbencia de un Gobernador diferente al período de cuatro años dispuesto por nuestra Constitución para que el gobernador o la gobernadora ejerza su cargo y ejercite su prerrogativa constitucional de nombrar los funcionarios.  Éste también es el <u>parámetro temporal</u> de los Presidentes de las Cámaras que se regulan en el segundo

---

[2] Véase, Orden Ejecutiva del 1ro de diciembre de 1967, Boletín Administrativo 1312, Gobernador Roberto Sánchez Vilella; Orden Ejecutiva del 9 de enero de 1981, Boletín Administrativo 3837, Gobernador Carlos Romero Barceló; Orden Ejecutiva del 22 de febrero de 1989, Boletín Administrativo 5288A, Gobernador Rafael Hernández Colón; Orden Ejecutiva del 7 de abril de 1994, Boletín Administrativo OG-1994-19, Gobernador Pedro Roselló.

párrafo de la misma disposición.   Para propósitos de esta ley, el funcionario cesa en su cargo cuando cesa el período de incumbencia del Ejecutivo. De ser nombrado nuevamente o retenido para ésa u otra posición en el Gabinete del Gobernador, ocupará el cargo por otro término que no podrá ser mayor de cuatro años. Debemos puntualizar que el Art. 3 de la Ley Núm. 125 va dirigida a que el Gobernador o la Gobernadora reglamente lo concerniente a los empleados públicos nombrados por él o ella, obviamente dentro del período para el cual es elegido, o sea, cuatro años. Inherente a la facultad constitucional de nominar se encuentra la concedida por la vía legislativa de reglamentar. Es un acto deferencial de la Legislatura hacia la Rama Ejecutiva, que en el mismo estatuto reservó igual facultad a los Presidentes de las Cámaras Legislativas respecto a ciertos funcionarios nombrados por éstos, cuyos términos de incumbencia no podrán exceder del término para el cual fueron aquéllos electos; esto es, cuatro años.

A modo de ilustración, la Regla VIII del Reglamento de la Cámara de 1967[3], fecha en que se promulgó la Ley 125[4], supra, establece que los empleados permanentes de la Cámara serán designados por el Presidente de ésta y ejercerán sus funciones durante el término de cada Asamblea Legislativa.

No encontramos ninguna razón lógica para que el Legislador le niegue a los funcionarios de la misma categoría en que se encuentra la peticionaria en este caso, lo que le ha concedido a los demás servidores públicos por vía de la legislación relativa al personal del gobierno y sus agencias e instrumentalidades.  No se puede dar otra interpretación a este estatuto que sea cónsona con su carácter.

---

[3] Corresponde, actualmente a la sección 9.1 del Reglamento de la Cámara de Representantes de Puerto Rico, aprobado el 17 de enero de 1997 y permanece sustancialmente igual.

[4] La Ley 125, supra, tuvo su origen en la Cámara de Representantes mediante el P. de la C. 567 de 1966 y fue de la autoría del Representante Severo Colberg.

Como regla general, un funcionario o servidor público que trabaja para el Gobierno[5] y que tiene derecho a acumular licencias por vacaciones y por enfermedad, acumula dos días y medio (2.5) días por cada mes en concepto de vacaciones y un día y medio (1.5) al mes por concepto de licencia por enfermedad. Anualmente ello equivale a 30 días por concepto de vacaciones regulares y 18 días por concepto de licencia por enfermedad. En cuatro años ese empleado público habrá <u>disfrutado</u> o <u>acumulado</u> un total de <u>ciento veinte (120) días de vacaciones regulares</u> y setenta y dos (72) días de licencia por enfermedad, es decir, ciento noventa y dos (192) días por concepto de ambas licencias. Si dividimos solamente lo que debió haber acumulado en <u>vacaciones regulares</u> en cuatro años, o sea <u>120 días</u>, entre el promedio de los días laborables de cada mes, tenemos que el funcionario habrá disfrutado del equivalente a seis meses de licencia por vacaciones regulares en un término de cuatro años. Es decir, <u>que el límite máximo de seis meses de sueldo que dispone la Ley Núm. 125 corresponde exactamente al mínimo que acumularía cualquier funcionario que trabajase durante cuatro años sin disfrutar de vacaciones o al mínimo que disfrutó en cuatro años cualquier funcionario que hizo uso de sus licencias por vacaciones acumuladas.</u>

Esto es así, sin contar los días a que podría tener derecho cualquier otro funcionario público por concepto de licencia por enfermedad, la cual, utilizando la misma ecuación, pudiera alcanzar <u>a 3.6 meses adicionales</u> en cuatro años; descontando, además, cualquier otro beneficio o licencia a los que pudieran tener derecho otros empleados públicos[6].

---

[5]   Véase, Ley de Personal de Servicio Público, 3 L.P.R.A. sec. 1355; Reglas del Sistema de Personal Judicial, 4 L.P.R.A. Ap. XII, R. 27, 28 y 29; Reglamento del Sistema de Personal del Poder Judicial, 4 L.P.R.A. Ap. XIII § 19; Administración de Asuntos de la Rama Legislativa, 2 L.P.R.A. § 551-553, Reglamentación 3 L.P.R.A. § 703b.

[6]   Como cuestión de hecho, si la Dra. Otero de Ramos hubiese sido una funcionaria "regular" de la Administración de Corrección, hubiese tenido derecho a que se le pagara anualmente, como mínimo, los días de enfermedad que tuviera acumulados en exceso del máximo de los noventa (90) permitidos por la Ley y el Reglamento o a que se le pagara todos aquellos días acumulados por tal concepto al momento de su terminación en el empleo. Véase 3 L.P.R.A. § 1355; Reglamento de Personal de la Administración de Corrección de 28 de septiembre de 1979, enmendado 18 de septiembre de 1987, Sección 11.4. (Vigente) Por otro lado, la Dra. Otero de Ramos, por haber sido "jefe de agencia" no era acreedora, y no recibió en ninguno de los años de su

No tiene ningún sentido que el Legislador promulgue una ley para propiciar que se pueda equiparar, aunque sea parcialmente, a estos servidores del Estado al resto de los empleados públicos y que el resultado de la ley sea que se les castigue, negándole suma otra alguna por este concepto cuando lo que intenta ese estatuto es, precisamente, compensar la pérdida de los beneficios a los cuales, según hemos visto, el funcionario deberá renunciar por el término a que concebiblemente estará limitada su incumbencia, esto es, el término del mandato electoral del gobernador o gobernadora. De retenerse en su puesto por un gobernador o gobernadora reelecto(a) o por un nuevo gobernador o gobernadora, comenzará un nuevo término de incumbencia para dicho funcionario el cual se extenderá por el nuevo cuatrienio electoral.

Si el fin de esa disposición es remedial, para equiparar a ese empleado ejecutivo que no acumula vacaciones regulares ni de enfermedad, y que tiene que estar disponible para ejercer sus funciones las veinticuatro (24) horas del día y siete (7) días a la semana, concediéndole una compensación por un plazo que, prorrateado, es equiparable, aunque menor, a la compensación que reciben otros empleados públicos a los que sí aplica el sistema de beneficios del gobierno, ¿qué justificación habría para que no se le quisiera extender ese beneficio a un funcionario que se compromete y trabaja durante un segundo cuatrienio?   Ciertamente más que la suspensión de un beneficio, resultaría en una penalidad para ese funcionario que accede a permanecer en el puesto durante un término adicional. ¿Por qué razón el Legislador hubiese querido un resultado tan inconsistente con el propósito que originó este estatuto reparador?

## IV

Cuando la Dra. Otero de Ramos recibió el pago global por parte del Ex Gobernador Rafael Hernández Colón, estaba vigente la Orden Ejecutiva del 22 de febrero de 1989, Boletín Administrativo Núm. 5288A. Esta orden

---

incumbencia, el bono de navidad dispuesto para los empleados y demás funcionarios públicos por la Ley Núm. 34 de 12 de junio de 1969. Específicamente, véase el artículo 7 de la misma, 3 L.P.R.A. § 757(F).

sustituyó la de 9 de enero de 1981, Boletín Administrativo 3837, del Ex Gobernador Carlos Romero Barceló, que permitía discreción al Gobernador para conceder una compensación final equivalente a seis meses de sueldo a los funcionarios que fueren retenidos por más de un término en el Gobierno <u>al finalizar el primer término y otra compensación final al completar el segundo término.</u>

Conforme a la potestad de reglamentar que le otorgó la Ley Núm. 125, supra, mediante la Orden Ejecutiva Núm. 5288A el Gobernador Hernández Colón <u>eliminó la disposición que facultaba al Gobernador a otorgar una compensación al finalizar un primer cuatrienio</u> a aquellos funcionarios que eran retenidos para un segundo cuatrienio.  El Art. 4 de la citada orden sólo autoriza al pago de dicha compensación "al cesar en su cargo cualquier funcionario".  Dicha determinación surgió a raíz de una Opinión del Secretario de Justicia[7], no publicada, a los efectos de que no se puede conceder compensación final hasta que no suceda la total separación o desvinculación del servicio o el funcionario pase a ocupar otro puesto en el Gobierno que no esté cubierto por el Artículo 3 de la Ley Núm. 125, supra. Véase Op. Sec. Just. del 2 de mayo de 1985.

El hecho de que, luego de unas elecciones generales el funcionario sea retenido en su puesto o nombrado para otra posición por el Gobernador o la Gobernadora electa, no puede ser fundamento para penalizarlo.  La única consecuencia, por virtud de la Orden Ejecutiva de 1989[8], fue que la compensación fuese diferida hasta la total y absoluta desvinculación que ésta exigía. Sólo esa interpretación es razonable a los propósitos de la

---

[7] Como bien se explica en la opinión disidente, el entonces Secretario de Justicia llevó una acción judicial contra los funcionarios a quienes les fueron concedidos dos pagos finales por un primer y un segundo cuatrienio. El antiguo Tribunal Superior validó las compensaciones finales que hizo el Gobernador Romero Barceló al terminar su primer cuatrienio a los funcionarios que retuvo durante su segundo cuatrienio.  Dicha sentencia no fue apelada por el Secretario de Justicia. Véase <u>Estado Libre Asociado v. Juan H. Cintrón y otros</u>, Sala Superior de San Juan, Civil Núm. 87-1933.

[8]  El Art. 3 de la Ley Núm. 125 no presupone la desvinculación total del servicio público; tal situación es contemplada únicamente por la Orden Ejecutiva vigente al momento.

Ley. Dicha compensación final fue pagada cuando la peticionaria cesó en su cargo.

V

La promulgación de la Ley Núm. 125 <u>fue anterior</u> a nuestra decisión de <u>Hernández Agosto v. Romero Barceló</u>, 112 D.P.R. 407 (1982). Allí resolvimos una controversia distinta[9] a la que ahora nos ocupa. Refiriéndose dicha decisión a un asunto completamente diferente al aspecto que regula el estatuto de marras y siendo los hechos que consideramos en el mencionado caso del todo incongruentes con el fin remediativo de la Ley Núm. 125, supra, resulta evidente que la doctrina allí establecida no es de aplicación al caso que ahora consideramos.

Por otro lado, al reconocer que un gobernador tiene el poder inherente de emitir órdenes ejecutivas, es preciso reiterar que ese poder está limitado por las leyes aplicables.[10] Una Orden Ejecutiva de un Gobernador no puede ir por encima y derrotar el objetivo pretendido por el Legislador de compensar la labor, el sacrificio, el tiempo y la dedicación de esos funcionarios a los que no le aplican los beneficios que los otros servidores públicos gozan en virtud de otros estatutos con propósitos similares.

Una interpretación razonable de la Ley Núm. 125 conduce a la conclusión inescapable de que la compensación final se realiza en sustitución de los beneficios estatutarios referentes a la acumulación, concesión y disfrute de licencias de las cuales gozan otros funcionarios y empleados del ELA. Siendo esto así, es necesario concluir que aquel funcionario que se desempeña en forma continua e ininterrumpida por un término que se extiende más allá del cuatrienio electoral para el cual fue nombrado originalmente, es elegible para recibir una cantidad que no podrá ser mayor al equivalente de seis meses de su sueldo por los servicios prestados dentro de cada uno de dichos cuatrienios, a discreción del Gobernador o Gobernadora, quien

---

[9] En ese caso resolvimos que la confirmación de un nombramiento hecho por un Senado válidamente constituido no pierde su vigencia cuando el Gobernador extiende el nombramiento a un segundo cuatrienio.

[10] <u>Soto v. Adm. Inst. Juveniles</u>, Res. el 30 de junio de 1999, 99 TSPR 106.

tomará en consideración al autorizar dicho pago, aquellos factores dispuestos en el Art. 3 de la Ley Núm. 125, supra.

**VI**

Razones adicionales de política pública nos confirman la corrección de nuestra decisión.

Constituye un sano principio de política pública de un Gobierno, que el gobernante pueda atraer y retener en el servicio público al mejor talento disponible. Es innegable que en un gran número de ocasiones los funcionarios públicos dentro de la categoría que hoy nos concierne, aceptan servir a nuestro Pueblo a costa de su bienestar económico, haciendo grandes sacrificios personales al privarse del disfrute de su hogar y de su familia; quienes son profesionales reconocidos que la mayor parte de las veces reciben mejores beneficios en la empresa privada. La disposición en cuestión, como estatuto reparador, facilita al gobernador incumbente a reclutar tales profesionales, ¿pero cómo retenerlos para un segundo término, para aprovechar toda la experiencia y destrezas obtenidas en el primero, sin aliciente económico alguno? Porque, según la interpretación del Procurador General, para propósitos de la Ley se retribuye igual al que prestó servicios un cuatrienio, que al que los prestó por dos o más cuatrienios. No pudo ser ése el resultado esperado por el Legislador.

Surge de los autos en forma incontrovertida que la Dra. Otero de Ramos se desempeñó por dos cuatrienios consecutivos. De igual forma surge que en los siete (7) años que duró su gestión, no tomó período alguno de vacaciones ni se ausentó por motivo de enfermedad. Durante su incumbencia la compareciente estuvo en licencia sin paga de la Universidad de Puerto Rico. El tipo de función que desempeñó como Administradora de Corrección requería su completa disponibilidad a cualquier hora y día de la semana. El entonces Gobernador Hernández Colón, en el ejercicio de su discreción, ponderó todos estos aspectos y le autorizó el pago de la suma máxima permitida por cada cuatrienio, que evidentemente equivale a la licencia de vacaciones que ella hubiese acumulado o disfrutado durante cada término en el cual se desempeñó en tal calidad.

## VII

A tenor con los fundamentos expuestos anteriormente se confirma la decisión del Tribunal de Circuito de Apelaciones que declara la validez del pago concedido a la Dra. Otero de Ramos en 1992, como compensación final en virtud de la Ley Núm. 125, 3 L.P.R.A. § 703(b).


JOSE A. ANDREU GARCIA
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mercedes Otero de Ramos

     Demandante

        vs.                        CC-2000-139        Certiorari

Hon. Manuel Díaz Saldaña
en su carácter oficial como
Secretario de Hacienda;
Estado Libre Asociado de
Puerto Rico

     Demandado

SENTENCIA

San Juan, Puerto Rico, a 14 de mayo de 2002

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la decisión del Tribunal de Circuito de Apelaciones que declara la validez del pago concedido a la Dra. Otero de Ramos en 1992, como compensación final en virtud de la Ley Núm. 125, 3 L.P.R.A., §703(b).

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente con opinión escrita. El Juez Asociado señor Fuster Berlingeri no intervino.

Patricia Otón Olivieri
Secretaria Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Mercedes Otero de Ramos

    Recurrida

       v.

Hon. Manuel Díaz Saldaña, en
su carácter oficial como
Secretario de Hacienda;                CC-2000-139      Certiorari
Estado Libre Asociado de
Puerto Rico

    Peticionarios



**Opinión Disidente emitida por el Juez Asociado señor Rivera Pérez.**




San Juan, Puerto Rico, a 14 de mayo de 2002.

El Secretario de Hacienda de Puerto Rico acude ante nos solicitando la revocación de una sentencia dictada por el Tribunal de Circuito de Apelaciones. Dicha sentencia declaró válido el pago por una suma global, ascendente a doce (12) meses de sueldo, otorgado a la Administradora de Corrección de Puerto Rico, como compensación final por separación del servicio, a tenor con lo dispuesto en el Artículo 3[11] de la Ley Núm. 125 de 10 de junio de 1967, según enmendada.[12]

---

[11] 3 L.P.R.A. sec. 703b.

[12] 3 L.P.R.A. secs. 703-703e.  Dicha ley fue enmendada por la Ley Núm. 40 de 13 de diciembre de 1990.  El Artículo 3 de la Ley Núm. 125 de 10 de junio de 1967, supra, dispone lo siguiente:

CC-2000-139

I

La doctora Mercedes Otero de Ramos se desempeñó, por dos (2) cuatrienios consecutivos, como Administradora de Corrección de Puerto Rico, hasta el año 1992. El 3 de junio de ese mismo año, el entonces Gobernador de Puerto Rico, honorable Rafael Hernández Colón, por motivo de la separación del servicio público de dicha funcionaria, **le concedió un pago equivalente a doce (12) meses de sueldo como compensación final**, a tenor con las facultades conferidas al Primer Ejecutivo por el Artículo 3 de la Ley Núm. 125, <u>supra</u>.[13] En julio de 1992 el Departamento de Hacienda de Puerto Rico realizó el pago correspondiente. El 18 de enero de 1995, el Secretario de Hacienda, honorable Manuel Díaz Saldaña, le cursó una carta a la doctora Mercedes Otero de Ramos indicándole que debía devolver la mitad de la compensación recibida, equivalente a seis (6) meses de sueldo, por haberse pagado ésta indebidamente. Dicho funcionario expresó que el Gobernador de Puerto Rico no tenía facultad para conceder una compensación mayor al equivalente a seis

---

El Gobernador reglamentará todo lo relativo a la concesión y disfrute de licencias y la cuantía del pago de compensación final, incluyendo el pago a los beneficiarios en casos de muerte, a los funcionarios nombrados por él, con excepción de los miembros de la Judicatura, los fiscales, procuradores y registradores de la propiedad. **A los efectos del pago de compensación final, que en ningún caso excederá el equivalente a seis (6) meses de sueldo**, el Gobernador tomará en consideración, entre otros, factores tales como las necesidades del servicio, la naturaleza de las funciones desempeñadas y los créditos de licencia de vacaciones acumuladas en empleos anteriores en el Gobierno y no disfrutada al pasar a ocupar puestos de nombramiento por el Gobernador. (Énfasis nuestro.)

Los presidentes de las Cámaras Legislativas reglamentarán lo relativo a los funcionarios y empleados de la Asamblea Legislativa, en lo concerniente a concesión y disfrute de licencias, y en lo concerniente al pago de compensación final se ajustarán a lo dispuesto en la sec. 703a de este título.

[13] Apéndice IV del recurso de <u>Certiorari</u>, pág. 27. De igual forma, le concedió una compensación final equivalente a doce (12) meses de sueldo al honorable Héctor Rivera Cruz, Secretario de Justicia, y a la licenciada Silvia Matos Pons, Directora de la Oficina de Exención Contributiva Industrial. El Secretario de Hacienda, honorable Manuel Díaz Saldaña, le pagó a la licenciada Matos Pons únicamente el equivalente a seis (6) meses de sueldo como compensación final. Ésta llevó un recurso de *Mandamus,* acción civil número KPE94-0002 (906), contra dicho funcionario. El Tribunal de Primera Instancia resolvió que el Secretario de Hacienda había actuado correctamente al negarse a efectuar el pago, al amparo del lenguaje claro del Artículo 3 de la Ley Núm. 125, <u>supra</u>.

(6) meses de sueldo dispuesto en el Artículo 3 de la referida ley.[14] La doctora Mercedes Otero de Ramos se negó a devolver dicha cantidad, y el 10 de abril de 1995 presentó una solicitud de sentencia declaratoria ante el Tribunal de Primera Instancia.[15] La funcionaria, en su demanda, solicitaba que dicho foro declarara que la compensación final que recibió estuvo autorizada por el estatuto aplicable o, en la alternativa, constituyó un error de derecho.[16]

El Tribunal de Primera Instancia dictó sentencia declaratoria el 27 de junio de 1996, archivada en autos copia de su notificación el 28 de junio de 1996.[17] Dicho Tribunal concluyó que la doctora Mercedes Otero de Ramos no tenía derecho a recibir una compensación final equivalente a doce (12) meses de sueldo, al amparo del Artículo 3 de la Ley Núm. 125, supra.[18] El referido foro determinó que la actuación de concederle a dicha funcionaria una compensación final mayor que la permitida por dicho estatuto, constituyó un acto ultra vires.[19]

El Tribunal de Primera Instancia apoyó su dictamen en lo resuelto por este Tribunal en Hernández Agosto v. Romero Barceló.[20] Dicho Tribunal entendió que la doctora Mercedes Otero de Ramos recibió un solo nombramiento para un cargo que se extendió por dos cuatrienios.[21] El referido Tribunal puntualizó, además, que la actuación del gobernador, al autorizar una compensación equivalente a doce (12) meses de sueldo, no podía ser consecuencia de un error de derecho, dado que el Artículo 3 de la Ley Núm. 125, supra, clara y expresamente, dispone que la compensación final no sería mayor, en ningún caso, al pago equivalente

---

[14] Apéndice V del recurso de Certiorari, pág. 28.

[15] Caso número KAC95-0434.

[16] Apéndice III del recurso de Certiorari, pág. 20.

[17] Íd., pág. 18.

[18] Íd., pág. 24.

[19] Íd.

[20] 112 D.P.R. 407 (1982). En esa ocasión pautamos que no existe disposición alguna en la Constitución de Puerto Rico, ni en los estatutos vigentes, que expresamente le imponga al Gobernador el deber de enviar al Senado, para su consejo y consentimiento, los nombramientos de los funcionarios de gobierno que éste decida retener en sus cargos, una vez reelecto para un segundo término.

a seis (6) meses del sueldo recibido por el funcionario mientras ocupaba su puesto.[22]

No conforme con dicha determinación, la doctora Mercedes Otero de Ramos presentó recurso de apelación ante el Tribunal de Circuito de Apelaciones el 27 de agosto de 1996.[23] La funcionaria alegó ante dicho foro que el Tribunal de Primera Instancia había errado al concluir que un funcionario que ocupa un cargo que requiere el consejo y el consentimiento del Senado por dos cuatrienios consecutivos, sólo tiene derecho a una compensación final equivalente a un máximo de seis (6) meses de sueldo. Adujo, en la alternativa, que el foro de primera instancia incidió al concluir que el pago efectuado como compensación final no había sido realizado por un error de derecho.[24]

El Tribunal de Circuito de Apelaciones emitió sentencia el 22 de diciembre de 1999, revocando la dictada por el Tribunal de Primera Instancia.[25] Dicho foro concluyó que los funcionarios nombrados por el Poder Ejecutivo que se desempeñan en sus puestos durante dos cuatrienios consecutivos, deben recibir el beneficio dispuesto por el Artículo 3 de la Ley Núm. 125, supra, **respecto a cada uno de los nombramientos extendidos por el gobernador.**[26] El referido Tribunal expresó que **el límite de la compensación establecida en dicho estatuto es aplicable al término por el cual normalmente se extiende el nombramiento de un funcionario, es decir, por un período de cuatro años.**[27] **Dicho foro apoyó su determinación en que una interpretación literal del mismo lesionaría la intención del legislador de compensar adecuadamente a los funcionarios nombrados por el gobernador, por razón de su dedicación al servicio público.**[28] **Añadió, que una interpretación razonable lleva a la conclusión de que la compensación final concedida a los funcionarios nombrados por el Poder Ejecutivo sustituye las**

---

[21] Apéndice III del recurso de Certiorari, pág. 22.

[22] Íd.

[23] Caso número KLAN9600082.

[24] Apéndice X del recurso de Certiorari, págs. 69-70.

[25] Apéndice I, Íd., págs. 1-16.

[26] Íd., pág. 15.

[27] Íd.

**disposiciones relativas a la acumulación, concesión y disfrute de licencias de las cuales gozan otros funcionarios y empleados del gobierno.**[29]  **Finalmente el referido foro determinó que el caso Hernández Agosto v. Romero Barceló, supra, no era de aplicación a la situación del caso de marras.**[30]  **Concluyó que el pago efectuado a la doctora Mercedes Otero de Ramos era legítimo y válido.**[31]

Inconforme con dicho dictamen, el 17 de febrero de 2000, el Secretario de Hacienda de Puerto Rico acudió ante nos, oportunamente.[32]

II

La Opinión Mayoritaria interpreta el Artículo 3 de la Ley Núm. 125, supra, a los efectos de que la intención del legislador detrás de ese estatuto consistió en que un funcionario público nombrado por el Gobernador de Puerto Rico para un puesto de confianza en su Gabinete, y que perdura en esa posición por dos (2) cuatrienios consecutivos, es acreedor a una compensación final, otorgada discrecionalmente por el Primer Ejecutivo, de doce (12) meses de sueldo. Respetuosamente disentimos.

No negamos, ni mucho menos rechazamos, la razonabilidad y justicia de la

---

[28] Íd., pág. 13.

[29] Íd., pág. 15.

[30] Íd., pág. 14.

[31] Íd., pág. 16.

[32] La parte aquí peticionaria señaló que el Tribunal de Circuito de Apelaciones había cometido los errores siguientes:

PRIMER ERROR

Erró el Tribunal de Circuito de Apelaciones al concluir que la interpretación del estatuto propuesta por el Procurador General lesiona la intención legislativa de compensar a los funcionarios por su dedicación al servicio público.

SEGUNDO ERROR

Erró el Tribunal de Circuito de Apelaciones al determinar que Hernández Agosto v. Romero Barceló, 112 D.P.R. 407 (1982) no es de aplicación al caso que nos ocupa.

TERCER ERROR

Erró el Tribunal de Circuito de Apelaciones al disponer que los diferentes gobernadores de Puerto Rico, quienes son los encargados de poner en vigor La Ley 125, reconocieron el propósito reparador, al entender que procedía el pago para uno de los cuatrienios.

norma que pretende pautar la Mayoría de los integrantes de este Tribunal en este asunto. Consideramos, en nuestro fuero interno, que lo decidido por la Mayoría de este Tribunal debería ser la política pública vigente en Puerto Rico. Concederle por estatuto una retribución de doce (12) meses de sueldo como compensación final a un funcionario de gobierno de confianza, nombrado por el Gobernador de Puerto Rico, que mantiene tal carácter en una o más posiciones de esa misma naturaleza por espacio de dos (2) cuatrienios consecutivos, es razonable y justo. Reconocemos que la misma se ajusta a la realidad de personas que, como regla general, ocupan posiciones como la de la doctora Otero de Ramos, con intenso sacrificio personal, familiar y económico. No obstante, muy respetuosamente, somos del criterio que la Mayoría realiza un ejercicio de formulación de política pública, que estamos impedidos constitucionalmente de realizar, en el ejercicio de interpretar un estatuto **en forma contraria a la clara intención del legislador.** Bajo nuestro sistema de separación de poderes, la función de formular política pública le corresponde a las otras dos ramas del Gobierno. La separación de poderes forma parte integral de nuestra democracia constitucional. Nuestro deber, dentro de la forma republicana de nuestro gobierno, se circunscribe a interpretar la ley y despejar las lagunas que existen en la misma, utilizando como guía la intención del legislador. En Alejandro Rivera y otros v. Estado Libre Asociado,[33] nos expresamos al respecto de la manera siguiente:

> Además, nos señala R.E. Bernier y J.A. Cuevas Segarra en su obra *Aprobación e interpretación de las leyes de Puerto Rico*, 2da ed., San Juan, Publicaciones J.T.S., 1987, Vol. I, pág. 299, que "[b]ajo un sistema de separación de poderes como el que funciona en Puerto Rico, la Asamblea Legislativa tiene la facultad de aprobar las leyes. El Poder Judicial ejercitado por los tribunales consiste en el ejercicio de las facultades de resolver los litigios a través de la interpretación de la ley. **En el desempeño normal de sus funciones, los tribunales están obligados a respetar la voluntad legislativa aunque los magistrados discrepen personalmente de la sabiduría de los actos legislativos. Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la rama judicial de las prerrogativas de la rama legislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable.** (Énfasis nuestro.)

---

[33] 140 D.P.R. 538 (1996).

El Secretario de Hacienda de Puerto Rico nos señala que el Tribunal de Circuito de Apelaciones interpretó de manera errada la intención legislativa detrás del Artículo 3 de la Ley Núm. 125, supra.

Una vez más reiteramos las normas de hermenéutica que nos guían en nuestro ministerio de interpretar las leyes. Al descargar nuestra función de interpretar una disposición particular de un estatuto, los tribunales debemos siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarlo, de manera que nuestra interpretación asegure la efectividad de la intención que lo anima.[34] **En esta búsqueda acudimos primero al texto de la ley, ya que cuando éste es claro y libre de ambigüedad, no debe ser menospreciado bajo el pretexto de cumplir su espíritu.[35] Ante un lenguaje claro e inequívoco del legislador, el texto de la ley es la expresión por excelencia de la intención legislativa.[36] La literalidad de una ley sólo puede ser ignorada cuando ésta es claramente contraria a la verdadera intención o propósito legislativo.[37]** En segunda instancia debemos consultar el historial del estatuto.[38] La Exposición de Motivos de la ley, los informes de las comisiones y los debates en el hemiciclo, en adición al texto de la misma, son las fuentes de mayor importancia en la tarea de determinar el significado de un acto legislativo.[39] Debe tomarse en consideración que todo acto legislativo persigue un propósito, trata de corregir un mal, alterar una situación existente, complementar una reglamentación vigente, fomentar algún bien específico o bienestar en general, reconocer o proteger un derecho, crear una política pública

---

[34] Irrizarry v. J&J Cons. Prods., Co., Inc., res. el 27 de enero de 2000, 2000 T.S.P.R. 15, 150 D.P.R. ___ (2000), 2000 J.T.S. 27; Dorante v. Wrangler of P.R., 145 D.P.R. 408 (1998); Vázquez v. A.R.P.E., 128 D.P.R. 513 (1991).

[35] 31 L.P.R.A. sec. 14.

[36] Irrizarry v. J&J Cons. Prods. Co., Inc., supra.

[37] Sucn. Álvarez v. Srio. de Justicia, res. el 11 de febrero de 2000, 2000 T.S.P.R. 21, 150 D.P.R. ___ (2000), 2000 J.T.S. 40; Pueblo v. Zayas Rodríguez, res. el 17 de febrero de 1999, 99 T.S.P.R. 15, 147 D.P.R. ___ (1999), 99 J.T.S. 16.

[38] Piñero v. A.A.A., 146 D.P.R. 890 (1998).

[39] Pueblo v. Zayas Rodríguez, supra.

o formular un plan de gobierno, entre otros. Por último, en el proceso de encontrar el significado de una ley que logre los propósitos del legislador, la interpretación debe hacerse con fines socialmente útiles.[40]

Para comprender cabalmente la intención legislativa detrás del Artículo 3 de la Ley Núm. 125, _supra_, se hace necesario hacer una exposición comprensiva del trasfondo legislativo del aludido estatuto. El mismo persigue compensar a ciertos funcionarios de la Rama Ejecutiva, por razón de que éstos no acumulan licencia por concepto de vacaciones regulares ni de enfermedad, como otros empleados públicos. A tal efecto, se persiguió facultar al Gobernador de Puerto Rico para otorgar un pago por concepto de compensación final, cuando el funcionario que se desvincula totalmente del cargo no acumula vacaciones. Inicialmente, el Artículo 3 del P. de la C. Núm. 567, no contenía una limitación a la compensación final, equivalente a seis (6) meses de sueldo del funcionario. Dicho artículo expresaba, en lo pertinente, de la manera siguiente:[41]

> Artículo 3- El Gobernador reglamentará todo lo relativo a la concesión y disfrute de licencias y la cuantía del pago de compensación final a los funcionarios nombrados por él, con excepción de los miembros de la Judicatura. A los efectos del pago de compensación final, el Gobernador tomará en consideración, entre otros, factores tales como las necesidades del servicio, la naturaleza de las funciones desempeñadas y los créditos de licencia de vacaciones acumuladas en empleos anteriores en el Gobierno y no disfrutada al pasar a ocupar puestos de nombramientos por el Gobernador.

La Comisión de Gobierno de la Cámara de Representantes recomendó la aprobación, **sin enmiendas**, del P. de la C. Núm. 567.[42] El 27 de abril de 1966, dicho proyecto fue aprobado **sin enmiendas** por la Cámara Baja.[43] El Proyecto pasó a ser considerado por el Senado de Puerto Rico. La Comisión de Elecciones y Personal de ese cuerpo recomendó que se aprobara el P. de la C. Núm. 567 con algunas enmiendas.[44] Una de las enmiendas propuesta por esa Comisión adicionaba a dicho artículo la frase **"que en ningún caso excederá el equivalente a seis**

---

[40] Íd.

[41] 20 Diario de Sesiones de la Cámara de Representantes 966, 967 (1966).

[42] Véase el Informe de dicha Comisión de 25 de abril de 1966; 20 Diario de Sesiones de la Cámara de Representantes 920, 967 (1966).

[43] 20 Diario de Sesiones de la Cámara de Representantes 968 (1966).

[44] 21 Diario de Sesiones del Senado 649, 1366 (1967).

**meses de sueldo"**, después de la expresión "compensación final".[45]  Así enmendado,

el texto del referido Artículo 3 leía de la forma siguiente:

> El Gobernador reglamentará todo lo relativo a la concesión y disfrute de licencias y la cuantía del pago de compensación final a los funcionarios nombrados por él, con excepción de los miembros de la Judicatura. **A los efectos del pago de compensación final, que en ningún caso excederá el equivalente a seis (6) meses de sueldo,** el Gobernador tomará en consideración, entre otros, factores tales como las necesidades del servicio, la naturaleza de las funciones desempeñadas y los créditos de licencia de vacaciones acumuladas en empleos anteriores en el Gobierno y no disfrutada al pasar a ocupar puestos de nombramiento por el Gobernador.

El Senado de Puerto Rico aprobó el P. de la C. Núm. 567, **con las enmiendas propuestas**, el 11 de mayo de 1967.[46]  El 15 de mayo de 1967, la Cámara de Representantes de Puerto Rico aprobó las enmiendas practicadas por el Senado a dicho proyecto.[47]  El P. de la C. Núm. 567 se convirtió, con la firma del Gobernador de Puerto Rico, en la Ley Núm. 125, supra, el 10 de junio de 1967.[48]

Una simple lectura del texto del aludido Artículo 3 de la Ley Núm. 125, supra, manifiesta claramente que la intención legislativa al enmendar dicho artículo fue establecer una **limitación inequívoca** para que en **ningún caso la compensación final que el Gobernador concediera a un funcionario del ejecutivo nombrado por él excediera el equivalente a seis (6) meses de sueldo.  No podemos aplicarle una mal llamada liberalidad interpretativa a un estatuto, cuando su letra es clara y, por ende, su mandato legislativo.[49]  La Opinión Mayoritaria expresa que una interpretación literal de la disposición en controversia nos conduce a un resultado patentemente irrazonable, que no pudo ser el deseado por**

---

[45] Íd., págs. 1392, 1393.

[46] Íd., pág. 1398.

[47] 21 Diario de Sesiones de la Cámara de Representantes 1571, 1580 (1967).

[48] 1967 Leyes de Puerto Rico 401.

[49] Dávila, Rivera v. Antilles Shipping, Inc., res. el 12 de febrero de 1999, 99 T.S.P.R. 12, 147 D.P.R. ___ (1999), 99 J.T.S. 10; Depto. de la Familia v. Soto, res. el 2 de marzo de 1999, 99 T.S.P.R. 19, 147 D.P.R. ___ (1999), 99 J.T.S. 21; Alejandro Rivera y otros v. Estado Libre Asociado, supra; Atlantic Pipe Corp. v. F.S.E., 132 D.P.R. 1026 (1993); Meléndez v. Tribunal Superior, 90 D.P.R. 65 (1964); Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966).

**el legislador.**[50]  **Nuestra función ministerial al interpretar las leyes no consiste en la suplantación del criterio legislativo por nuestro concepto de lo justo y razonable.  Nuestro deber, cuando la ley es clara, consiste en respetar y hacer cumplir la voluntad legislativa.**

El Secretario de Hacienda de Puerto Rico arguye, además, que el Tribunal de Circuito de Apelaciones erró al interpretar que las Órdenes Ejecutivas han reconocido la discreción del Gobernador para otorgar un pago por concepto de compensación final en exceso de lo dispuesto en el referido estatuto.

El honorable Roberto Sánchez Vilella, Gobernador de Puerto Rico, emitió la primera Orden Ejecutiva sobre este asunto el 1 de diciembre de 1967.[51]  Dicha orden estableció el propósito detrás del pago por concepto de compensación final de los funcionarios nombrados por el Primer Ejecutivo. La misma disponía lo siguiente:

> El alcance del pago de compensación final es conceder al funcionario, **a la fecha de su separación definitiva del servicio,** una suma de dinero a los fines de compensarlo por la licencia de vacaciones que no disfrutó y reconocer su esfuerzo y dedicación al servicio.[52]  (Énfasis nuestro.)

Específicamente, en cuanto al pago por compensación final, la referida orden disponía:

> Al **cesar en su cargo** cualquier funcionario, el Gobernador, a su discreción, autorizará el pago a tal funcionario de una suma en efectivo que **no excederá del equivalente de seis meses del sueldo que corresponda a su cargo**.[53]  (Énfasis nuestro.)

Dicha Orden fue derogada el 9 de enero de 1981, por otra emitida por el honorable Carlos Romero Barceló, Gobernador de Puerto Rico.[54]  Este documento autorizaba al Primer Ejecutivo a efectuar un pago equivalente a seis (6) meses de sueldo a ciertos funcionarios de esa rama de gobierno **por cada término que ocuparan en su puesto**.  El mismo expresaba, en relación con el pago de

---

[50] Véase la página 7 de dicha ponencia.

[51] Apéndice XIV del recurso de *Certiorari*, págs. 168-173; Boletín Administrativo Núm. 1312 de 1 de diciembre de 1967, enmendado por el Boletín Administrativo 1387 de 23 de julio de 1968.

[52] Íd., pág. 171.

[53] Íd., pág. 172.

[54] Apéndice XV del recurso de *Certiorari*, págs. 174-176; Boletín Administrativo Núm. 3837, según enmendado por el Boletín Administrativo Núm. 4088 de 11 de marzo de 1983.

compensación final, lo siguiente:

> Al **cesar en su cargo** cualquier funcionario, el Gobernador, a su discreción, autorizará el pago a tal funcionario de una suma en efectivo **que no excederá del equivalente de seis meses del sueldo que corresponda a su cargo. Además de lo dispuesto anteriormente, el Gobernador, podrá autorizar a su discreción el pago de compensación final a aquellos funcionarios que hayan servido durante el cuatrienio anterior a su elección o reelección a los cuales decida retener en su mismo cargo.**[55] (Énfasis nuestro.)

La referida Orden Ejecutiva fue emitida luego de una consulta realizada por el Gobernador Romero Barceló a su Secretario de Justicia, honorable Miguel Giménez Muñoz, quien emitió una Opinión, no publicada, el 22 de diciembre de 1980, expresando que el Primer Ejecutivo tenía facultad para realizar el pago por concepto de compensación final autorizado en el Artículo 3 de la Ley Núm. 125, <u>supra</u>, a ciertos funcionarios de la Rama Ejecutiva, por cada término que ocuparan su puesto. El Gobernador Romero Barceló, en virtud de esta orden, autorizó el pago equivalente a doce (12) meses de sueldo a ciertos funcionarios que ocuparon sus puestos por dos términos consecutivos en dicha rama de gobierno.

El honorable Rafael Hernández Colón, Gobernador de Puerto Rico, emitió una Orden Ejecutiva el 22 de febrero de 1989 derogando la emitida por el Ex—Gobernador Romero Barceló.[56] La actuación del Ex-Gobernador Hernández Colón fue el resultado de una consulta que realizara a su Secretario de Justicia, honorable Héctor Rivera Cruz, mediante la cual se cuestionó la facultad que tenía el anterior Primer Ejecutivo para conceder el pago equivalente a doce (12) meses de sueldo como compensación final a funcionarios nombrados por él.[57] El

---

[55] Íd., págs. 175-176.

[56] Apéndice XII del recurso de <u>Certiorari</u>, págs. 161-163; Boletín Administrativo 5288A, según enmendado por la Orden Ejecutiva 1991-35 de 23 de julio de 1991 y por la Orden Ejecutiva de 8 de abril de 1994, Boletín Administrativo número OE-1994-19. Ésta última mantuvo la limitación del pago por compensación final al equivalente de seis (6) meses de sueldo.

[57] Apéndice III del recurso de <u>Certiorari</u>, págs. 103-109. Debemos señalar que el Secretario de Justicia, honorable Héctor Rivera Cruz, llevó una acción judicial contra los funcionarios a quienes les fue concedido dicho pago como compensación final. Véase Apéndice III del recurso de <u>Certiorari</u>, págs. 110-133, <u>Estado Libre Asociado de Puerto Rico v. Juan H. Cintrón</u>, caso civil número 87-1933, sobre sentencia declaratoria y cobro de dinero. El Tribunal de Primera Instancia declaró la demanda no ha lugar. Entendió que los pagos efectuados eran válidos, a tenor con lo dispuesto en el Artículo 3 de la Ley Núm. 125, <u>supra</u>, y la Orden Ejecutiva vigente al momento de ser realizados.

Secretario de Justicia opinó que el Primer Ejecutivo no tenía la facultad de otorgar una compensación a un funcionario nombrado por él que excediera el equivalente a seis (6) meses de sueldo. Sobre tal asunto expresó lo siguiente:

> Entiendo que en casos de funcionarios nombrados por el Gobernador en su primer término y retenidos por éste al ser reelecto **no se le puede otorgar la compensación final establecida en el Artículo 3 de la Ley 125 en dos ocasiones, al ocurrir la reelección y cuando finalmente abandonan sus puestos, sino sólo en el último caso, esto es, cuando cesan en sus cargos.**[58] (Énfasis nuestro.)

> En primer lugar, debo señalar que del texto del Artículo 3 no surge una autorización expresa que faculte al Gobernador a otorgar la compensación final, situación bajo estudio. Tampoco he encontrado historial legislativo al respecto.

La referida Orden Ejecutiva emitida por el Gobernador Hernández Colón perseguía **específicamente dejar sin efecto la práctica de la Oficina del Gobernador, de conceder una compensación final en exceso del equivalente a los seis (6) meses de sueldo, por estar en contravención a lo establecido en el Artículo 3 de la Ley Núm. 125,** <u>supra</u>.[59] Dispuso que **en ningún caso dicha compensación final excedería el equivalente a seis (6) meses del sueldo** que devengaba el funcionario en su cargo. A tales extremos, el Artículo 4 de dicha Orden disponía lo siguiente:

> Al **cesar en su cargo** cualquier funcionario, el Gobernador, a su discreción, autorizará el pago a tal funcionario, o a los beneficiarios en casos de muerte, de una suma en efectivo **que no excederá del equivalente de seis meses de sueldo** que corresponda al cargo.[60] (Énfasis nuestro.)

En el caso de autos, la Orden Ejecutiva emitida el 22 de febrero de 1989 por el entonces Gobernador Rafael Hernández Colón, era la vigente al momento de concederle el pago por compensación final, equivalente a doce (12) meses de sueldo, a la Administradora de Corrección. Ésta clara y categóricamente limitaba el pago por concepto de compensación final **al cesar en su cargo**, al equivalente a seis (6) meses de sueldo del funcionario en cuestión. La actuación del referido Gobernador de otorgar un pago como compensación final que excedía la limitación establecida en su Orden Ejecutiva, Boletín Administrativo Núm.

---

[58] Apéndice III del recurso de <u>Certiorari</u>, pág. 106.

[59] Apéndice XII, Íd., pág. 163.

[60] Íd., pág. 162.

5288A, y que, además, sobrepasaba el límite establecido en el Artículo 3 de la Ley Núm. 125, supra, entendemos, muy respetuosamente, que fue una contraria a derecho. No entendemos la posición de la Mayoría, al concluir que el pago contemplado en el Artículo 3 de la Ley Núm. 125, supra, procede únicamente cuando el funcionario se desvincula total y absolutamente de su cargo, y al mismo tiempo proponer que la compensación final equivalente a seis (6) meses de sueldo procede por cada uno de los cuatrienios que un funcionario ejecutivo ocupe en su **cargo en forma consecutiva**. Dicha conclusión nos parece insostenible, dado el claro lenguaje del estatuto.

Por último, el Secretario de Hacienda de Puerto Rico plantea ante nos que erró el Tribunal de Circuito de Apelaciones al concluir que lo pautado por este Tribunal en Hernández Agosto v. Romero Barceló, supra, no era aplicable al caso de autos. De conformidad a lo allí pautado, la peticionaria ocupó el cargo de Administradora de Corrección por espacio de siete (7) años en forma consecutiva y por dos (2) cuatrienios seguidos. No hubo una interrupción, un cese o una desvinculación de la doctora Mercedes Otero de Ramos en las funciones de su cargo. Del texto del referido Artículo 3 de la Ley Núm. 125, supra, surge **palmariamente** que se trata de una **compensación final** que el gobernador habrá de otorgar, de manera discrecional, al momento de cesar en el cargo. No se desprende de la intención legislativa que el Gobernador tenga discreción alguna para otorgar un pago de seis (6) meses de sueldo por cada cuatrienio de servicio prestado por el funcionario, cuando éste no cesó en las funciones de su cargo, sino que, por el contrario, se mantuvo en forma continua por espacio de siete (7) años y por dos cuatrienios consecutivos. Concluimos que no procede el referido pago por compensación final cuando el funcionario renuncia a su puesto para ocupar otro en la Rama Ejecutiva, de la misma naturaleza, o cuando el funcionario continúa desempeñando un puesto de esa naturaleza por más de un cuatrienio.[61]

El acto legislativo constitutivo de la aprobación del Artículo 3 de la Ley 125, supra, perseguía el propósito de formular una política pública que le

---

[61] Véase la Op. Sec. Just. 1987-6; Op. Sec. Just. 1989-21; Op. Sec. Just. 1989-35; Op. Sec. Just. 1990-37; Opinión del Secretario de Justicia de 27 de diciembre de 1993, no publicada.

hiciera justicia a los funcionarios públicos de confianza nombrados por el Gobernador(a) de Puerto Rico, que no tienen derecho a acumular vacaciones regulares ni de enfermedad, concediéndole como **compensación final** un equivalente que en ningún caso o circunstancia excediera seis (6) meses de su sueldo, **cuando tal funcionario se desvincula total y absolutamente de dicho cargo**. A través del estudio de las circunstancias particulares del presente caso, tenemos la firme convicción de que la Asamblea Legislativa no alcanzó su propósito de hacerle justicia a esos funcionarios, cuando ocupan el cargo por dos (2) cuatrienios consecutivos. No obstante, las reglas de hermenéutica legal existen para asistir a los tribunales en la interpretación de los estatutos, aunque los jueces discrepen personalmente de la sabiduría de los actos legislativos. No podemos, por entender que la aplicación de la letra clara de un estatuto resulta irrazonable, rechazar la intención del legislador por entenderla inapropiada. En estas situaciones está en manos del Poder Legislativo corregir tal situación. No le corresponde tal ministerio a la Rama Judicial, por estar impedida de formular política pública. Aún en casos como el presente, en que nos parece que la política pública debería ser lo expresado por la Mayoría, no nos corresponde a nosotros ese ejercicio.

IV

¿Le corresponde a la doctora Mercedes Otero de Ramos devolver el exceso de lo cobrado indebidamente? Concluimos en la afirmativa. Veamos.

El Artículo 1795 del Código Civil de Puerto Rico recoge la figura doctrinal conocida como cobro de lo indebido. Dicho Artículo lee de la manera siguiente:[62]

> Cuando se recibe alguna cosa que no había derecho a cobrar, y que por error ha sido indebidamente entregada, surge la obligación de restituirla.

Este Tribunal ha sostenido que bajo la doctrina del cuasicontrato contemplado en el Artículo 1795, supra, el que recibe alguna cosa, a la cual no tenía derecho a cobrar, y que por un error de hecho haya sido indebidamente

---

[62] 31 L.P.R.A. sec. 5121.

pagada, tendrá la obligación de restituirla.[63] Dicho pago tuvo que ser satisfecho indebidamente, por error de hecho o equivocación y no por mera liberalidad.[64] Diferente es la situación cuando el pago efectuado es consecuencia de un error de derecho. Cuando el pago es producto de un error de derecho, no procede la devolución de lo indebidamente pagado.[65] El error de derecho ocurre cuando la persona que realiza el pago lo hace amparado en la creencia de que éste le es exigible en derecho, bien por desconocimiento de la norma que lo descarga del pago o por interpretación errónea del derecho aplicable.[66] La doctrina del error de derecho exime a la persona que recibió el pago indebido de la devolución de lo pagado, aún cuando se trate de fondos públicos.[67] Concluimos que la doctrina antes esbozada no es de aplicación al caso de autos, dada la letra clara del Artículo 3 de la Ley Núm. 125, supra, y de la Orden Ejecutiva vigente al momento de realizarse el pago.

V

Por los fundamentos anteriormente expuestos, hubiéramos revocado la sentencia dictada por el Tribunal de Circuito de Apelaciones y confirmado la emitida por el Tribunal de Primera Instancia.


Efraín E. Rivera Pérez
Juez Asociado


---

[63] Aulet v. Depto. Servicios Sociales, 129 D.P.R. 1 (1991); E.L.A. v. Asoc. Empleados Obras Púb. Mun., 126 D.P.R. 320 (1990); Cartagena v. E.L.A., 116 D.P.R. 254 (1985); Sucn. Choisne v. Municipio, 100 D.P.R. 501 (1972); American Railroad Co. v. Wolkers, 22 D.P.R. 283 (1915).

[64] Íd.

[65] Aulet v. Depto. Servicios Sociales, supra; Cartagena v. E.L.A., supra.

[66] Sepúlveda v. Depto. de Salud, 145 D.P.R. 560 (1998); Aulet v. Depto. Servicios Sociales, supra; Cartagena v. E.L.A., supra.

[67] <u>Aulet v. Depto. Servicios Sociales</u>, <u>supra</u>; <u>A.C.A.A. v. Bird Piñero</u>, 115 D.P.R. 254 (1985).