EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ramiro Rodríguez Ramos y otros<br><br>　　Recurridos<br><br>　　　　v.<br><br>E.L.A. de P.R. y otros<br><br>　　Peticionarios | Certiorari<br><br>2014 TSPR 32<br><br>190 DPR ____ |

Número del Caso: CC-2013-234

Fecha: 6 de marzo de 2014

Oficina de la Procuradora General:

      Lcda. Margarita Mercado Echegaray
      Procuradora General

      Lcda. Amir Cristina Nieves Villegas
      Procuradora General Auxiliar

Abogada de la Recurrida:

      Lcdo. Ramiro Rodríguez Peña
      Lcdo. Reynaldo Rodríguez Ramos

Materia: Contratación gubernamental: requisito de contrato reducido a escrito.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Ramiro Rodríguez Ramos y
otros

    Recurridos

        v.                         CC-2013-234    Certiorari

E.L.A. de P.R. y otros

    Peticionarios

Opinión del Tribunal emitida por el Juez Presidente señor HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 6 de marzo de 2014.

En esta ocasión, debemos determinar si un contrato verbal entre un proveedor de servicios legales y el gobierno se puede validar mediante el otorgamiento de un contrato retroactivo. Resolvemos en la negativa. Por entender que el contrato es nulo, que no puede validarse retroactivamente y que el proveedor no puede reclamar al gobierno por los servicios prestados, revocamos la Sentencia emitida por el Tribunal de Apelaciones.

I.

El Lcdo. Ramiro Rodríguez Ramos prestó sus servicios profesionales como abogado al Departamento de Transportación y Obras Públicas (DTOP) y a la

Autoridad de Carreteras y Transportación (ACT) desde 1990 hasta el 2 de julio de 2007. La ACT es una corporación pública adscrita al DTOP.

El 18 de febrero de 2006, el licenciado Rodríguez Ramos entregó al Director de la Oficina de Asuntos Legales del DTOP y la ACT, el Lcdo. Manuel Cámara Montull, los documentos necesarios para la renovación de sus contratos para el año fiscal 2006-2007. El 16 de mayo de 2006, el Ayudante Especial del Secretario del DTOP, el Lcdo. Alberto Castro, informó al abogado que la ACT le renovaría el contrato, le sometió el borrador del contrato y le solicitó que suministrara por segunda vez los documentos necesarios para la renovación correspondiente. El licenciado Rodríguez Ramos así lo hizo.

La ACT preparó el contrato de servicios profesionales para el año fiscal 2006-2007 y la certificación para registrarlo en la Oficina del Contralor. El licenciado Rodríguez Ramos suscribió ambos documentos y los entregó al licenciado Cámara Montull para que fueran a su vez suscritos por la agencia y registrados en la Oficina del Contralor. Sin embargo, el licenciado Cámara Montull se limitó a registrar el borrador del contrato en el Área de Finanzas y no lo procesó.

El 22 de diciembre de 2006, el licenciado Rodríguez Ramos sometió nuevamente los documentos necesarios para renovar los contratos por escrito. Luego, informó al licenciado Cámara Montull y a la Asesora Legal del Director Ejecutivo de la ACT, la Lcda. Ivette Cancel, que tenían que

pagarle los servicios prestados mediante resolución de reconocimiento de deuda, pues la ACT y el DTOP lo habían autorizado a continuar prestando sus servicios.

En junio de 2007, la Lcda. Grace Santana Balado asumió la dirección de la Oficina de Asuntos Legales y solicitó al licenciado Rodríguez Ramos un informe sobre los asuntos que le habían sido referidos. El abogado entregó el informe solicitado y los documentos necesarios para otorgar los contratos para el próximo año fiscal: 2007-2008. Luego, este informó a la licenciada Santana que no le habían renovado los contratos para ese año, por lo que le solicitó que le informaran por escrito si lo autorizaban a continuar representando legalmente a la agencia ante los tribunales. El 2 de julio de 2007, la licenciada Santana le indicó que no le iban a otorgar contrato para el referido año fiscal y que no le pagarían los servicios prestados que no estaban cubiertos por contrato escrito. Consecuentemente, le pidió que renunciara a la representación legal de la ACT y DTOP ante los tribunales y que le entregara los expedientes de los casos que tenía asignados.

Así las cosas, el abogado presentó la demanda de epígrafe el 4 de septiembre de 2007. Alegó que la ACT le debía $106,910.16 por servicios prestados durante los años fiscales 2004-2005 y 2005-2006, así como $264,786.70 por el año fiscal 2006-2007. Por otra parte, reclamó a DTOP $11,521.61 por los servicios legales prestados durante el año fiscal 2004-2005, $2,343.75 por el año fiscal 2005-2006 y $46,323.76 por el año fiscal 2006-2007. En 2010, la ACT y

el DTOP pagaron las sumas de dinero correspondientes a los primeros dos periodos, pero no las correspondientes al año fiscal 2006-2007.

El licenciado Rodríguez Ramos presentó una moción de sentencia sumaria. Alegó que la ACT y el DTOP debían pagarle los servicios restantes porque fueron estos quienes impidieron que el contrato fuera llevado a escrito. Por su parte, la ACT y el DTOP alegaron que el requisito de que los contratos se reduzcan a escrito es indispensable para que nazca la obligación entre el proveedor de los servicios y el Estado.

El Tribunal de Primera Instancia resolvió mediante sentencia sumaria parcial que, una vez el licenciado Rodríguez Ramos firmó los contratos con la ACT y el DTOP para el año fiscal 2006-2007, los funcionaros correspondientes tenían la obligación de firmarlos y registrarlos en la Oficina del Contralor. Por ello, ordenó a la parte demandada a suscribir con el demandante un contrato con vigencia retroactiva para cubrir los servicios profesionales prestados durante el año fiscal 2006-2007, registrarlo en la Oficina de Contralor y pagar al abogado los servicios prestados durante dicho periodo. En síntesis, fundamentó su dictamen en la doctrina general de los contratos, en la Ley Núm. 18 del 30 de octubre de 1975, conocida como "Ley de Registro de Contratos en la Oficina del Contralor de Puerto Rico", según enmendada, (Ley Núm. 18-1975), 2 L.P.R.A. sec. 97(a), y en la Orden Ejecutiva OE-

2006-23, *infra*. El foro primario sostuvo su dictamen tras una moción de reconsideración.

Insatisfecho, el Estado Libre Asociado de Puerto Rico (ELA) acudió ante el Tribunal de Apelaciones. Ese foro confirmó al Tribunal de Primera Instancia. Todavía inconforme, el ELA acudió ante nos. Argumenta que el foro apelativo intermedio erró al ordenar a la parte demandada suscribir un contrato retroactivo para cubrir los servicios legales que el abogado prestó durante el año fiscal 2006-2007. Sostiene que "[e]se mandato contraviene de la Ley Núm. 237 de 31 de agosto de 2004, la jurisprudencia … en materia de contratos gubernamentales y la política pública de rango constitucional que ordena la más adecuada y responsable erogación de los fondos públicos". Ordenamos al demandante que mostrara causa por la cual no debemos revocar el dictamen recurrido. Así lo hizo. Contando con el beneficio de la comparecencia de ambas partes, expedimos el recurso y procedemos a resolver.

## II.

### A. Norma general de los contratos

El Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994, dispone que: "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos". VDE Corp. v. F & R Contractors, 180 D.P.R. 21, 34 (2010); López v. González, 163 D.P.R. 275, 281 (2004). Consecuentemente, un contrato existe desde que una o varias personas prestan su consentimiento a obligarse a dar alguna cosa o prestar algún

servicio. Art. 1206 del Código Civil, 31 L.P.R.A. sec. 3371. Unisys Puerto Rico, Inc. v. Ramallo Brothers, 128 D.P.R. 842, 852 (1991). Este será válido si concurren tres elementos: consentimiento, objeto y causa. Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391. Incluso, el Art. 1230 del mismo Código, 31 L.P.R.A. sec. 3451, establece claramente que "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez".

En nuestro ordenamiento, el principio de autonomía contractual permite que las partes contratantes establezcan los pactos, cláusulas y condiciones que entiendan convenientes. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Véanse Torres, Torres v. Torres Serrano, 179 D.P.R. 481, 493 (2010); Oriental Finances Services v. Nieves, 172 D.P.R. 462, 470-471 (2007). Ahora bien, el contrato será nulo e inexistente si es contrario a las leyes, moral o al orden público. Pepsi-Cola v. Mun. Cidra, 186 D.P.R. 713, 752 (2012); Oriental Finances Services v. Nieves, supra; Morales v. Municipio de Toa Baja, 119 D.P.R. 682, 692-693 (1987). Esto, sin importar el tipo de contrato del que se trate y la importancia que este merezca para las partes contratantes. De Jesús González v. A.C., 148 D.P.R. 255, 263-64 (1999). Véase, además, Morales v. Municipio de Toa Baja, supra. En tales casos, cualquiera de las partes contratantes puede impugnar el contrato, aunque se haya beneficiado del mismo.

De Jesús González v. A.C., *supra*, pág. 264; Rasa Eng. Corp. v. Daubón, 86 D.P.R. 193, 198 (1962).

## B. Contratación gubernamental

Respecto a la contratación gubernamental, el Estado está obligado por imperativo constitucional a manejar los fondos públicos con los principios fiduciarios y éticos más altos. Jaap Corp. v. Depto. Estado *et al.*, 187 D.P.R. 730, 739 (2013); C.F.S.E. v. Unión de Médicos, 170 D.P.R. 443, 452 (2007). En particular, la Sec. 9 del Art. VI de nuestra Constitución establece que "[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley". Art. VI, Sec. 9, Const. E.L.A., L.P.R.A., Tomo 1.

Para cumplir con este mandato constitucional, la Legislatura ha aprobado leyes que imponen controles fiscales y de contratación gubernamental. Jaap Corp. v. Depto. Estado *et al.*, *supra*. Siendo así, conforme a las disposiciones del Código Civil antes citadas, un contrato entre una parte privada y el Estado que no cumpla con estas leyes será nulo e inexistente. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Con ello en mente, veamos las disposiciones legales que aplican al contrato ante nos.

## C. Ley de Contabilidad del Gobierno de Puerto Rico

La Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como "Ley de Contabilidad del Gobierno de Puerto Rico", 3 L.P.R.A. sec. 283 *et seq.* (Ley Núm. 230-1974), se aprobó con el propósito de lograr el "control

**previo** de todas las operaciones del gobierno" para que sea posible planificar el presupuesto y programas de gobierno correspondientes. (Énfasis suplido). Art. 2(e) de la Ley Núm. 230-1974, 3 L.P.R.A. sec. 283a(e).

A esos efectos, esta ley establece que "[t]odas las asignaciones y los fondos autorizados para las atenciones de un año económico, serán aplicados **exclusivamente** al pago de los gastos **legítimamente incurridos** durante el respectivo año o al pago de obligaciones **legalmente contraídas y debidamente asentadas en los libros**". (Énfasis suplido). Art. 8(a) de la Ley Núm. 230-1974, 3 L.P.R.A. sec. 283g(a). Cabe destacar que el Art. 3(k) de esta ley, 3 L.P.R.A. sec. 283b(k), define "obligación" como "[u]n compromiso contraído que esté representado por orden de compra, **contrato o documento similar**, pendiente de pago, **firmado por autoridad competente** para gravar las asignaciones, **y que puede convertirse en el futuro en deuda exigible**". (Énfasis suplido).

De igual manera, el Art. 9(a) del mismo cuerpo legal, 3 L.P.R.A. sec. 283h(a), exige que

> [l]as dependencias ordenarán obligaciones y desembolsos de sus fondos públicos **únicamente** para obligar o pagar servicios, suministros de materiales y equipos, reclamaciones u otros conceptos **que estuvieren autorizados por ley.** El Secretario contabilizará las obligaciones y efectuará y contabilizará los desembolsos a través de **documentos** que sometan las dependencias, los cuales serán **previamente aprobados para obligación o pago** por el jefe de la dependencia correspondiente o por el funcionario o empleado que éste designare como su representante autorizado. (Énfasis suplido).

Así pues, la Ley Núm. 230-1974, *supra*, establece claramente que, para que un contrato otorgado por el Estado y una parte

privada sea válido y exigible, este debe constar por escrito previo a las prestaciones correspondientes.

**D. Ley para establecer parámetros uniformes en los procesos de contratación de servicios profesionales o consultivos para las agencias y entidades gubernamentales**

En lo pertinente al caso que evaluamos, la Asamblea Legislativa aprobó la Ley Núm. 237 de 31 de agosto de 2004, conocida como "Ley para establecer parámetros uniformes en los procesos de contratación de servicios profesionales o consultivos para las agencias y entidades gubernamentales", según enmendada, 3 L.P.R.A. secs. 8611-8615, (Ley Núm. 237-2004). Para que un contrato gubernamental para la prestación de servicios profesionales o consultivos sea válido, tiene que cumplir con los requisitos de esta ley. Íd. Los servicios legales están cobijados por la definición que esta ley hace del concepto de "servicios profesionales o consultivos", a saber, "aquellos cuya prestación principal consista del producto de la labor intelectual, creativa o artística, o en el manejo de destrezas altamente técnicas o especializadas". Art. 1 de la Ley Núm. 237-2004, 3 L.P.R.A. sec. 8611.

De entrada, el Art. 2 de la Ley Núm. 237-2004, 3 L.P.R.A. sec. 8612, establece claramente que la contratación gubernamental de servicios profesionales debe ser la excepción y que solo se utilizará "cuando la entidad gubernamental no cuente a [sic] no pueda utilizar los recursos internos a ser contratados, o cuando el *expertise,* destreza o experiencia del contratista sea necesario para la consecución de los fines para lo cual es contratado". Este Artículo también exige que, al momento de contratar los

servicios de un contratista, el Estado tome en cuenta "la necesidad real de los servicios a contratarse, la situación económica y el presupuesto de la entidad gubernamental contratante". Íd.

Además de establecer que la contratación gubernamental de servicios profesionales debe ser excepcional, la Ley Núm. 237-2004 enumera en su Art. 3 una serie de requisitos, tanto de forma como sustantivos, con los cuales debe cumplir todo contrato entre el Estado y un contratista. 3 L.P.R.A. sec. 8613. En específico, este Artículo requiere:

> (a) El otorgamiento de un contrato de servicios profesionales o consultivos entre un contratista y el Gobierno deberá ser **prospectivo**. Toda entidad gubernamental pagará únicamente por servicios rendidos.

> (b) Debe formalizarse **por escrito** e incluirse en el texto del mismo la disposición legal que faculta a la entidad gubernamental a otorgar contratos. (Énfasis suplido). Íd.

El resto de los incisos de esta disposición legal detalla la información que debe contener el contrato sobre el contratista, los servicios que prestará, la vigencia del contrato, la cuantía máxima a pagarse y la forma de pago. Íd. Más adelante, el Art. 5 de la misma ley, 3 L.P.R.A. sec. 8615, requiere que se incluya en el contrato una lista extensa de cláusulas mandatorias.

Vemos, pues, que la Ley Núm. 237, *supra*, establece que todo contrato gubernamental de servicios profesionales o consultivos, categoría que incluye la prestación de servicios legales, solo será válido si se hace constar por escrito y tiene vigencia prospectiva. Sin lugar a dudas, la Ley Núm.

237, *supra*, prohíbe la contratación verbal y retroactiva de servicios profesionales y consultivos.

**E. Jurisprudencia sobre contratación gubernamental**

Por nuestra parte, hemos reiterado que, para que un contrato entre un ente privado y el Estado tenga efecto vinculante entre las partes, este debe constar por escrito. Cordero Vélez v. Mun. Guánica, 170 D.P.R. 237, 248 (2007); Municipio Mayagüez v. Lebrón, 167 D.P.R. 713, 719-720 (2006). Este requisito tiene que cumplirse **sin excepción alguna.** Fernández & Gutiérrez v. Municipio de San Juan, 147 D.P.R. 824, 833 (1999), citando a Hatton v. Mun. de Ponce, 134 D.P.R. 1001 (1994).

De hecho, en Alco Corp. v. Municipio de Toa Alta, 183 D.P.R. 530 (2011), nos enfrentamos a una controversia donde un contratista comenzó a prestar sus servicios sin todavía obtener un contrato escrito, terminó su trabajo y, posteriormente, las partes otorgaron el contrato escrito. Íd. Una vez el contratista intentó cobrar su acreencia al Municipio, acudió sin éxito al foro judicial. Íd. Llegado el caso ante nuestra consideración, rechazamos tajantemente la validación de contratos verbales municipales mediante el otorgamiento por escrito de contratos formales retroactivos. Íd., pág. 540. Concluimos que realizar una obra antes de tener un contrato escrito viola las normas de contratación gubernamental. Íd. Además, razonamos que validar un contrato retroactivamente fomentaría la corrupción, pues un contratista podría realizar la obra antes de otorgar el contrato escrito para presionar su otorgamiento futuro, ya

sea por la administración de turno o la siguiente. Íd., pág. 543.

Asimismo, resolvimos recientemente que la contratación retroactiva sobre el arrendamiento de un bien viola la normativa sobre contratación gubernamental. Jaap Corp. v. Depto. Estado *et al.*, *supra*. En este caso, expresamos que

> la contratación gubernamental retroactiva hace inoperante todo *control previo* a la formación de una obligación del Gobierno, lo cual es contrario a la política pública establecida en el Art. 2(e) de la Ley Núm. 230, *supra.* Esta práctica impide, además, que terceros como la Oficina del Contralor cumplan con la política pública de la Ley Núm. 230 y que los ciudadanos puedan obtener el contrato escrito para pasar juicio sobre la contratación, pues el contrato se escribe y publica luego de la ejecución y consumación de las obligaciones allí dispuestas. (Énfasis en el original). Íd., pág. 748.

Así, hemos reiterado que las partes que contratan con cualquier entidad gubernamental sin cumplir con los requisitos de contratación gubernamental se arriesgan a asumir la responsabilidad por sus pérdidas. Quest Diagnostics v. Municipio de San Juan, 175 D.P.R. 994, 1002 (2009); Colón v. Municipio de Arecibo, 170 D.P.R. 718, 728-729 (2007). Ello, pues hemos rechazado consecuentemente la aplicación de cualquier remedio en equidad, como el enriquecimiento injusto, para convalidar la obligación pública sin contrato escrito y así indemnizar los daños sufridos por una parte privada al no cumplir con estos requisitos. Alco Corp. v. Municipio de Toa Alta, *supra*, pág. 552; Las Marías v. Municipio de San Juan, 159 D.P.R. 868, 875 (2003).

### F. Registro en la Oficina del Contralor

Además de la clara exigencia de que el contrato gubernamental conste por escrito y sea prospectivo, el Art. 1

de la Ley Núm. 18-1975, 2 L.P.R.A. sec. 97(a), dispone, en lo pertinente, lo siguiente:

> Las entidades gubernamentales y las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o la enmienda.

Al interpretar esta disposición, resumimos que la sana administración pública requiere que los contratos con el Gobierno cumplan con los requisitos siguientes: 1) se reduzcan a escrito; 2) se mantenga un registro fiel con miras a establecer su existencia *prima facie*; 3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencia; y 4) que se acredite la certeza de tiempo, es decir, haber sido realizado y otorgado quince días antes. CMI Hospital v. Depto. Salud, 171 D.P.R. 313, 320 (2007); Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 54 (1988).

Además, hemos señalado que es evidente la intención del legislador de crear mediante esta pieza legislativa un mecanismo de cotejo y publicidad de los contratos gubernamentales. CMI Hospital v. Depto. Salud, *supra*; Fernández & Gutiérrez v. Municipio de San Juan, *supra*, pág. 830. Estas disposiciones rigurosas responden al interés del Estado de prevenir el despilfarro, la corrupción y el amiguismo en la contratación gubernamental y así promover una administración pública sana y recta. Íd.

Posteriormente, la Ley Núm. 127 del 31 de mayo de 2004 enmendó el Art. 1 de la Ley Núm. 18-1975, *supra*, para aclarar

que el incumplimiento con el requisito de registrar y remitir un contrato a la Oficina del Contralor de Puerto Rico puede ser subsanado y no acarrea la nulidad del mismo. Colón Colón v. Mun. Arecibo, *supra*, pág. 727-29; Lugo v. Municipio de Guayama, 163 D.P.R. 208, 219 (2004). En cambio, se dispuso que incumplir con este requisito tiene como efecto prohibir el desembolso de fondos públicos o que se requirieran servicios hasta tanto estos se registren conforme a la ley y la reglamentación aplicable. Íd.

Sin embargo, hemos reiterado que estos cambios radicales en la normativa jurisprudencial sobre contratación gubernamental "*no tienen el efecto de alterar la política pública establecida en nuestro ordenamiento jurídico a los efectos de que la buena administración de un gobierno conlleva el realizar sus funciones como comprador con la mayor eficacia a los fines de proteger los intereses y el dinero del pueblo*". (Énfasis en el original). Lugo v. Municipio de Guayama, *supra*. Véase además, Colón Colón v. Mun. Arecibo, *supra*. En particular, aclaramos que

> la Ley Núm. 127 enmendó la Ley Núm. 18 para establecer que la no remisión de copia de un contrato municipal ante la Oficina del Contralor de Puerto Rico o la falta de registro de éste en los libros del municipio, no viciaba de nulidad el contrato suscrito. **Ello no comporta**, como concluye el foro apelativo intermedio, **que el mismo principio aplique cuando de lo que se trata es de un acuerdo que nunca se redujo a escrito. Somos del criterio que la Ley Núm. 127 no contempló este escenario.**
>
> Existe una marcada diferencia entre unos requisitos y otros. La exigencia de que un contrato suscrito se anote en la bitácora municipal y su copia se remita a la Oficina del Contralor de Puerto Rico va encaminada a ofrecerle publicidad, frente a terceros, a la contratación municipal. De

esta forma los terceros pueden fiscalizarla. Sin embargo, **exigir que los contratos suscritos se reduzcan a escrito tiene una insoslayable dimensión de sana administración pública**, en la medida que permite salvaguardar los intereses de las partes contratantes frente a un incumplimiento, permite la ordenada utilización de los fondos municipales, evita la incertidumbre en la confección del presupuesto municipal y hace posible la adecuada identificación de la partida contra la cual se harán los desembolsos públicos en cumplimiento con la ley. Es decir, los primeros son más que nada de carácter procesal y de ordenada tramitación, mas el último es sustantivo por su directa relación con la sana administración pública. En atención a lo cual, debemos concluir que **el incumplimiento con el requisito de reducir a escrito el contrato municipal por fuerza afecta adversamente la eficacia de las obligaciones contraídas.** (Énfasis suplido). Colón Colón v. Mun. Arecibo, *supra*, págs. 729-30.

### G. Orden ejecutiva

Los foros inferiores también fundamentaron su decisión en la Orden Ejecutiva OE-2006-23, *infra*, para ordenar al Estado a suscribir con el demandante un contrato con vigencia retroactiva para cubrir los servicios profesionales prestados durante el año fiscal 2006-2007, registrarlo en la Oficina del Contralor y pagar al abogado los servicios prestados. Examinemos la normativa aplicable sobre las órdenes ejecutivas.

En primer lugar, es menester señalar que la facultad del Gobernador para emitir órdenes ejecutivas no está regulada, justificada o explicada por alguna disposición estatutaria o constitucional. W. Vázquez Irizarry, Los Poderes del Gobernador de Puerto Rico y el Uso de Órdenes Ejecutivas, 76 Rev. Jur. U.P.R. 951, 1020 (2007). Por nuestra parte, hemos sido claros al reiterar que las órdenes ejecutivas emitidas por el Primer Ejecutivo no pueden contravenir las leyes

aplicables. Véase Otero de Ramos v. Srio. de Hacienda, 156 D.P.R. 876, 892 (2002), citando a Soto v. Adm. Inst. Juveniles, 148 D.P.R. 810 (1999).

Al respecto, el Prof. William Vázquez Irizarry sostiene que el caso clásico en que el uso de este mecanismo menoscaba la función legislativa es cuando "la orden ejecutiva que pretenda lograr objetivos que han sido rechazados de forma manifiesta por el poder legislativo, por lo que la única base legal que podría sustentar la pretensión del Gobernador son sus poderes constitucionales o bien un reclamo de poderes inherentes". Vázquez Irizarry, supra, pág. 1047. Valga destacar que la Sec. 4 del Art. IV de nuestra Constitución no confiere al Primer Ejecutivo el poder de reglamentar la contratación gubernamental con entes privados. Véase Art. IV, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1.

Una orden ejecutiva también podría menoscabar el proceso de reglamentación administrativa. Vázquez Irizarry, supra, pág. 1051. Este tipo de reglamentación es una función clásica que tienen los foros administrativos cuando la Legislatura les ha delegado autoridad para reglamentar, en cuyo caso aplicarían los términos procesales dispuestos en la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, (LPAU), 3 L.P.R.A. sec. 2101-2201. Íd. En este contexto, el uso de órdenes ejecutivas podría presentar problemas en la medida en que pretenda establecer reglas que afectan derechos de terceros sin contar con la legitimidad que imprimen los requisitos de participación ciudadana

dispuestos por la LPAU. Íd., pág. 1053. En lo pertinente, el Profesor Vázquez Irizarry asevera lo siguiente:

> Se puede aducir que este problema no debiera existir puesto que uno de los principios que definen el uso de las órdenes ejecutivas, es que las mismas son mandatos de aplicación "dentro de la rama ejecutiva", por lo que no hay terceros que se puedan ver afectados. Lo cierto, sin embargo, es que algunas órdenes procuran establecer programas o políticas públicas a un nivel de detalle que sitúa sus efectos muy cerca de la ciudadanía. **Ese es el caso de las órdenes que aunque están dirigidas a entidades públicas, afectan las relaciones que éstas tienen con terceros, particularmente en el ámbito de la adquisición de bienes o servicios.** (Énfasis suplido). Íd., pág. 1054.

En el caso de epígrafe, los foros inferiores fundamentaron sus respectivos dictámenes en la "Orden ejecutiva del Gobernador del Estado Libre Asociado para reglamentar el pago por servicios prestados a las agencias e instrumentalidades de la Rama Ejecutiva sin mediar un contrato formal debidamente registrado en la Oficina del Contralor", Orden Ejecutiva OE-2006-23, (Orden Ejecutiva) firmada por el entonces Gobernador Aníbal Acevedo Vilá el 22 de junio de 2006. En específico, se basaron en que la exposición de motivos de la Orden Ejecutiva, *supra*, establece que "[e]l mero hecho que un servicio se haya prestado de acuerdo con un entendido verbal entre el ELA y el contratista no impide que el ELA decida reducir tal acuerdo a escrito posteriormente y honrar el pago justo por los servicios prestados". Orden Ejecutiva, pág. 3.

Como hemos visto, si bien el Gobernador tiene la facultad de emitir órdenes ejecutivas como parte de los poderes que le confieren las leyes o de los poderes inherentes a su cargo, este no puede emitir órdenes

ejecutivas de forma contraria a lo dispuesto por ley. Otero de Ramos v. Srio. de Hacienda, *supra*. La Ley Núm. 237-2004, *supra*, exige que todo contrato gubernamental de servicios legales se haga por escrito y con vigencia prospectiva. Es decir, esta ley prohíbe la contratación verbal de estos servicios, así como la contratación por escrito con vigencia retroactiva. De igual forma, la Ley Núm. 230-1974, *supra*, requiere que los contratos gubernamentales consten previamente por escrito para ser válidos. Asimismo, la exigencia que el contrato sea registrado en la Oficina del Contralor establecida por la Ley Núm. 18-1975, *supra*, supone que este conste por escrito y sea prospectivo.

Por otro lado, la Asamblea Legislativa no ha delegado a ninguna agencia administrativa el poder de reglamentar normas nuevas de contratación gubernamental que vayan en contra de lo establecido en las disposiciones legales discutidas en los acápites anteriores. Consiguientemente, la Orden Ejecutiva es inválida en la medida que permite validar contratos verbales con el Estado mediante contratos formales retroactivos, contrario a lo dispuesto por ley.

## III.

En el caso de epígrafe, no está en controversia que las partes nunca suscribieron un contrato escrito para el año fiscal 2006-2007. Como expusimos, las leyes citadas, así como su jurisprudencia interpretativa, prohíben el desembolso de fondos públicos por servicios prestados sin que medie previamente un contrato gubernamental válido que cumpla con todos los requisitos estrictos sobre contratación

gubernamental. Incluso, disponen que todo contrato que no se formalice conforme a estas normas es nulo. Asimismo, vimos que la Orden Ejecutiva, *supra*, que permitiría validar retroactivamente el contrato en cuestión, es inválida porque contraviene las leyes sobre contratación gubernamental.

Por último, hemos sido consecuentes en rechazar firmemente la aplicación de cualquier remedio en equidad para convalidar la obligación pública verbal y poder indemnizar a la parte privada los daños sufridos por prestar sus servicios sin cumplir con las normas de contratación gubernamental. Véanse Alco Corp. v. Municipio de Toa Alta, *supra*; Las Marías v. Municipio de San Juan, *supra*.

Al aplicar este marco normativo al caso ante nuestra consideración, es forzoso concluir que la reclamación del licenciado Rodríguez Ramos no es exigible. Este prestó sus servicios legales conociendo que no existía un contrato escrito que vinculara al Estado. Siendo así, el contrato verbal en el cual pretende basar su reclamación es nulo. Ante esta realidad, tampoco procede aplicar remedio en equidad alguno. El licenciado Rodríguez Ramos se arriesgó a asumir la responsabilidad por sus pérdidas, tal y como hemos advertido a todo aquel que contrata con cualquier entidad gubernamental sin cumplir con los requisitos de contratación gubernamental. Véanse Quest Diagnostics v. Municipio de San Juan, *supra*; Colón v. Municipio de Arecibo, *supra*.

Por tanto, los foros inferiores erraron al ordenar a la DTOP y la ACT a suscribir un contrato con vigencia retroactiva para cubrir los servicios profesionales prestados

durante el año fiscal 2006-2007, registrarlo en la Oficina del Contralor y pagar al abogado los servicios prestados durante dicho periodo.

IV.

Por los fundamentos antes expuestos, se revoca la Sentencia emitida por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramiro Rodríguez Ramos y
otros

    Recurridos

        v.                  CC-2013-234    Certiorari

E.L.A. de P.R. y otros

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 6 de marzo de 2014.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la Sentencia emitida por el Tribunal de Apelaciones.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió un Voto Particular de Conformidad al cual se une el Juez Asociado señor Rivera García. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Ramiro Rodríguez Ramos y otros<br><br>Recurridos<br><br>v.<br><br>E.L.A. de P.R. y otros<br><br>Peticionarios | CC-2013-0234 | *Certiorari* |
|---|---|---|

Voto particular de conformidad emitido por la Jueza Asociada señora Pabón Charneco al cual se une el Juez Asociado señor Rivera García.

En San Juan, Puerto Rico, a 6 de marzo de 2014.

Estoy conforme con la Opinión que antecede. La controversia que enfrentamos hoy, específicamente si una parte privada y el Estado pueden otorgar un contrato retroactivo para validar la previa prestación de servicios profesionales sin haber cumplido con las formalidades relativas a la contratación gubernamental, ha sido objeto de análisis por este Tribunal dentro de contextos análogos al de autos.

Como bien se señala en la Opinión, tan recientemente como en Jaap Corp. v. Depto. Estado et al., 187 D.P.R. 730, 748-749 (2013), resolvimos que es contrario a las normas sobre contratación gubernamental el otorgar un contrato con efecto retroactivo para validar un arrendamiento que se estaba llevando a cabo entre un ente privado y un municipio sin mediar contrato escrito entre las partes. Véase además ALCO Corp. v. Mun. de Toa Alta, 183 D.P.R. 530 (2011). Aprovecho esta ocasión para reiterar que la norma que prohíbe la contratación gubernamental con efecto retroactivo es cónsona con los principios más fundamentales de sana administración pública y un adecuado control en los

desembolsos de fondos públicos. <u>Jaap Corp. v. Depto. Estado et al.</u>, *supra*, pág. 744. Lo anterior es aplicable tanto a los municipios como al gobierno central y sus dependencias.

Por último, resulta pertinente expresarme en cuanto a la utilización de Órdenes Ejecutivas como mecanismo para usurpar funciones propias de la Rama Legislativa, tal y como ocurrió con la Orden Ejecutiva Núm. OE-2006-23 de 22 de junio de 2006, promulgada por el entonces Gobernador de Puerto Rico, Aníbal Acevedo Vilá, cuyo propósito era autorizar la contratación gubernamental retroactiva. Sin pasar juicio sobre la validez de la referida Orden Ejecutiva, ya en <u>Jaap Corp. v. Depto. Estado et al.</u>, *supra*, pág. 749 esc. 11, resaltamos los inconvenientes que había causado la contratación gubernamental retroactiva tanto en la Oficina del Contralor como en el Departamento de Justicia. A falta de delegación constitucional o legislativa a la Rama Ejecutiva del poder de reglamentar la contratación gubernamental, la actuación del otrora Gobernador violenta principios constitucionales básicos sobre separación de poderes.[1] Art. I, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1. Resolver lo contrario resultaría en darle validez a una clara intromisión del Poder Ejecutivo en los poderes delegados por nuestra Constitución al Poder Legislativo. Así las cosas, este Tribunal actuó correctamente al invalidar la Orden Ejecutiva Núm. OE-2006-23, *supra*.

Por todo lo anterior, estoy conforme con la Opinión emitida el día de hoy.

Mildred G. Pabón Charneco
Jueza Asociada

---

[1] Ello resulta aún más preocupante ante los resultados de las Elecciones Generales celebradas el 2 de noviembre de 2004, que dieron lugar a un gobierno compartido entre los dos principales partidos políticos de Puerto Rico.