El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
En esta ocasión debemos determinar si un contrato verbal entre un proveedor de servicios legales y el Gobierno se puede validar mediante el otorgamiento de un contrato retroactivo. Resolvemos en la negativa. Por entender que el contrato es nulo, que no puede validarse retroactiva-mente y que el proveedor no puede reclamar al gobierno por los servicios prestados, revocamos la sentencia emitida por el Tribunal de Apelaciones.
I
El Ledo. Ramiro Rodríguez Ramos prestó sus servicios profesionales como abogado al Departamento de Transportación y Obras Públicas (DTOP) y a la Autoridad de Carre-teras y Transportación (ACT) desde 1990 hasta el 2 de julio de 2007. La ACT es una corporación pública adscrita al DTOP.
El 18 de febrero de 2006 el licenciado Rodríguez Ramos entregó al Director de la Oficina de Asuntos Legales del DTOP y la ACT, el Ledo. Manuel Cámara Montull, los do-cumentos necesarios para la renovación de sus contratos para el año fiscal 2006-2007. El 16 de mayo de 2006 el Ayudante Especial del Secretario del DTOP, el Ledo. Alberto Castro, informó al abogado que la ACT le renovaría el contrato, le sometió el borrador del contrato y le solicitó que suministrara por segunda vez los documentos necesa-rios para la renovación correspondiente. El licenciado Ro-dríguez Ramos así lo hizo.
La ACT preparó el contrato de servicios profesionales para el año fiscal 2006-2007 y la certificación para regis- *453 trarlo en la Oficina del Contralor. El licenciado Rodríguez Ramos suscribió ambos documentos y los entregó al licen-ciado Cámara Montull para que fueran a su vez suscritos por la agencia y registrados en la Oficina del Contralor. Sin embargo, el licenciado Cámara Montull se limitó a registrar el borrador del contrato en el Área de Finanzas y no lo procesó.
El 22 de diciembre de 2006 el licenciado Rodríguez Ramos sometió nuevamente los documentos necesarios para renovar los contratos por escrito. Luego, informó al licen-ciado Cámara Montull y a la Asesora Legal del Director Ejecutivo de la ACT, la Leda. Ivette Cancel, que tenían que pagarle los servicios prestados mediante una resolución de reconocimiento de deuda, pues la ACT y el DTOP lo habían autorizado a continuar prestando sus servicios.
En junio de 2007 la Leda. Grace Santana Balado asumió la dirección de la Oficina de Asuntos Legales y solicitó al licenciado Rodríguez Ramos un informe sobre los asuntos que le habían sido referidos. El abogado entregó el informe solicitado y los documentos necesarios para otorgar los con-tratos para el próximo año fiscal 2007-2008. Luego, este informó a la licenciada Santana que no le habían renovado los contratos para ese año, por lo que le solicitó que le informaran por escrito si lo autorizaban a continuar repre-sentando legalmente a la agencia ante los tribunales. El 2 de julio de 2007 la licenciada Santana le indicó que no le iban a otorgar contrato para el referido año fiscal y que no le pagarían los servicios prestados que no estaban cubier-tos por contrato escrito. Consecuentemente, le pidió que renunciara a la representación legal de la ACT y DTOP ante los tribunales y que le entregara los expedientes de los casos que tenía asignados.
Así las cosas, el abogado presentó la demanda de epí-grafe el 4 de septiembre de 2007. Alegó que la ACT le debía $106,910.16 por servicios prestados durante los años fisca-les 2004-2005 y 2005-2006, así como $264,786.70 por el *454 año fiscal 2006-2007. Por otra parte, reclamó a DTOP $11,521.61 por los servicios legales prestados durante el año fiscal 2004-2005, $2,343.75 por el año fiscal 2005-2006 y $46,323.76 por el año fiscal 2006-2007. En 2010 la ACT y el DTOP pagaron las sumas de dinero correspon-dientes a los primeros dos periodos, pero no las correspon-dientes al año fiscal 2006-2007.
El licenciado Rodríguez Ramos presentó una moción de sentencia sumaria. Alegó que la ACT y el DTOP debían pagarle los servicios restantes porque fueron estos quienes impidieron que el contrato fuera llevado a escrito. Por su parte, la ACT y el DTOP alegaron que el requisito de que los contratos se reduzcan a escrito es indispensable para que nazca la obligación entre el proveedor de los servicios y el Estado.
El Tribunal de Primera Instancia resolvió mediante sentencia sumaria parcial que, una vez el licenciado Rodrí-guez Ramos firmó los contratos con la ACT y el DTOP para el año fiscal 2006-2007, los funcionaros correspondientes tenían la obligación de firmarlos y registrarlos en la Ofi-cina del Contralor. Por ello, ordenó a la parte demandada a suscribir con el demandante un contrato con vigencia re-troactiva para cubrir los servicios profesionales prestados durante el año fiscal 2006-2007, registrarlo en la Oficina de Contralor y pagar al abogado los servicios prestados du-rante dicho periodo. En síntesis, fundamentó su dictamen en la doctrina general de los contratos, en la Ley Núm. 18 de 30 de octubre de 1975, conocida como Ley de Registro de Contratos en la Oficina del Contralor de Puerto Rico, se-gún enmendada (Ley Núm. 18-1975), 2 LPRA sec. 97(a), y en la Orden Ejecutiva OE-2006-23, infra. El foro primario sostuvo su dictamen tras una moción de reconsidera-ción.
Insatisfecho, el Estado Libre Asociado de Puerto Rico (ELA) acudió ante el Tribunal de Apelaciones. Ese foro con-firmó al Tribunal de Primera Instancia. Todavía incon- *455 forme, el ELA acudió ante nos. Argumenta que el foro ape-lativo intermedio erró al ordenar a la parte demandada suscribir un contrato retroactivo para cubrir los servicios legales que el abogado prestó durante el año fiscal 2006-2007. Sostiene que “[e]se mandato contraviene las disposi-ciones de la Ley Núm. 237 de 31 de agosto de 2004, la jurisprudencia [...] en materia de contratos gubernamen-tales y la política pública de rango constitucional que or-dena la más adecuada y responsable erogación de los fon-dos públicos”. Petición de certiorari, pág. 8. Ordenamos al demandante que mostrara causa por la cual no debemos revocar el dictamen recurrido. Así lo hizo. Contando con el beneficio de la comparecencia de ambas partes, expedimos el recurso y procedemos a resolver.
r-H I — I
A. Norma general de los contratos
El Art. 1044 del Código Civil, 31 LPRA sec. 2994, dispone que “las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos”. Véanse, además: VDE Corporation v. F & R Contractors, 180 DPR 21, 34 (2010); López v. González, 163 DPR 275, 281 (2004). Consecuentemente, un contrato existe desde que una o varias personas prestan su consentimiento a obligarse a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 LPRA sec. 3371. Unisys v. Ramallo Brothers, 128 DPR 842, 852 (1991). Este será válido si concurren tres elementos: con-sentimiento, objeto y causa. Art. 1213 del Código Civil, 31 LPRA see. 3391. Incluso, el Art. 1230 del mismo Código, 31 LPRA sec. 3451, establece claramente que “[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez”.
En nuestro ordenamiento, el principio de autono- *456 mía contractual permite que las partes contratantes esta-blezcan los pactos, las cláusulas y las condiciones que en-tiendan convenientes. Art. 1207 del Código Civil, 31 LPRA sec. 3372. Véanse: Torres, Torres v. Torres et al., 179 DPR 481, 493 (2010); Oriental Financial v. Nieves, 172 DPR 462, 470-471 (2007). Ahora bien, el contrato será nulo e inexistente si es contrario a las leyes, a la moral o al orden público. Pepsi-Cola v. Mun. Cidra et al., 186 DPR 713, 752 (2012); Oriental Financial v. Nieves, supra; Morales v. Municipio de Toa Baja, 119 DPR 682, 692—693 (1987). Esto, sin importar el tipo de contrato del que se trate y la importancia que este merezca para las partes contratantes. De Jesús González v. A.C., 148 DPR 255, 263-264 (1999). Véase, además, Morales v. Municipio de Toa Baja, supra. En tales casos, cualquiera de las partes contratantes puede impugnar el contrato, aunque se haya beneficiado del mismo. De Jesús González v. A.C., supra, pág. 264; Rasa Eng. Corp. v. Daubón, 86 DPR 193, 198 (1962).
B. Contratación gubernamental
Respecto a la contratación gubernamental, el Estado está obligado, por imperativo constitucional, a mane-jar los fondos públicos con los principios fiduciarios y éticos más altos. Jaap Corp. v. Depto. Estado et al., 187 DPR 730, 739 (2013); C.F.S.E. v. Unión de Médicos, 170 DPR 443, 452 (2007). En particular, la See. 9 del Art. VI de nuestra Constitución establece que “ [s] ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley”. Art. VI, Sec. 9, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 429.
Para cumplir con este mandato constitucional, la Legis-latura ha aprobado leyes que imponen controles fiscales y de contratación gubernamental. Jaap Corp. v. Depto. Estado et al., supra. Siendo así, conforme a las disposiciones del Código Civil antes citadas, un contrato entre una parte *457 privada y el Estado que no cumpla con estas leyes será nulo e inexistente. Art. 1207 del Código Civil, supra. Con ello en mente, veamos las disposiciones legales que aplican al contrato ante nos.
C. Ley de Contabilidad del Gobierno de Puerto Rico
La Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como Ley de Contabilidad del Gobierno de Puerto Rico, 3 LPRA sec. 283 et seq. (Ley Núm. 230-1974), se aprobó con el propósito de lograr el “control previo de todas las operaciones del gobierno” para que sea posible planificar el presupuesto y programas de gobierno correspondientes. (Énfasis suplido). Art. 2(e) de la Ley Núm. 230-1974 (3 LPRA sec. 283a(e)). A esos efectos, esta ley establece que “[t]odas las asignaciones y los fondos au-torizados para las atenciones de un año económico, serán aplicados exclusivamente al pago de gastos legítimamente incurridos durante el respectivo año o al pago de obligaciones legalmente contraídas y debidamente asentadas en los libros”. (Énfasis suplido). Art. 8(a) de la Ley Núm. 230-1974 (3 LPRA sec. 283g(a)). Cabe destacar que el Art. 3(k) de esta ley, 3 LPRA sec. 283b(k), define “obligación” como “[u]n compromiso contraído que esté representado por orden de compra, contrato o documento similar, pendiente de pago, firmado por autoridad competente para gravar las asignaciones, y que puede convertirse en el futuro en deuda exigible”. (Énfasis suplido).
De igual manera, el Art. 9(a) del mismo cuerpo legal, 3 LPRA sec. 283h(a), exige que
[l]as dependencias ordenarán obligaciones y desembolsos de sus fondos públicos únicamente para obligar o pagar servicios, suministros de materiales y equipos, reclamaciones u otros conceptos que estuvieren autorizados por ley. El Secretario contabilizará las obligaciones y efectuará y contabilizará los desembolsos a través de documentos que sometan las depen-dencias, los cuales serán previamente aprobados para obliga-ción o pago por el jefe de la dependencia correspondiente o por *458 el funcionario o empleado que éste designare como su repre-sentante autorizado. (Enfasis suplido).
Así pues, la Ley Núm. 230-1974 establece claramente que, para que un contrato otorgado por el Estado y una parte privada sea válido y exigible, este debe constar por escrito previo a las prestaciones correspondientes.
D. Ley para Establecer Parámetros Uniformes en los Pro-cesos de Contratación de Servicios Profesionales o Consul-tivos para las Agencias y Entidades Gubernamentales
En lo pertinente al caso que evaluamos, la Asamblea Legislativa aprobó la Ley Núm. 237 de 31 de agosto de 2004, conocida como Ley para Establecer Parámetros Uni-formes en los Procesos de Contratación de Servicios Profe-sionales o Consultivos para las Agencias y Entidades Gubernamentales, según enmendada, 3 LPRA secs. 8611-8615 (Ley Núm. 237-2004). Para que un contrato gubernamental para la prestación de servicios profesionales o consultivos sea válido, tiene que cumplir con los requisitos de esta ley. íd. Los servicios legales están cobijados por la definición que esta ley hace del concepto de “servicios profesionales o consultivos”, a saber, “aquellos cuya prestación principal consista del producto de la labor intelectual, creativa o artística, o en el manejo de destrezas altamente técnicas o especializadas”. Art. 1 de la Ley Núm. 237-2004 (3 LPRA sec. 8611).
De entrada, el Art. 2 de la Ley Núm. 237-2004 (3 LPRA sec. 8612) establece claramente que la contratación gubernamental de servicios profesionales debe ser la excepción y que solo se utilizará “cuando la entidad guberna-mental no cuente [o] no pueda utilizar los recursos internos a ser contratados, o cuando el expertise, destreza o experiencia del contratista sea necesario para la consecu-ción de los fines para lo cual es contratado”. Este artículo también exige que, al momento de contratar los servicios de un contratista, el Estado tome en cuenta “la necesidad *459 real de los servicios a contratarse, la situación económica y el presupuesto de la entidad gubernamental contratante”. íd.
Además de establecer que la contratación guber-namental de servicios profesionales debe ser excepcional, la Ley Núm. 237-2004 enumera en su Art. 3 una serie de requisitos, tanto de forma como sustantivos, con los cuales debe cumplir todo contrato entre el Estado y un contratista. 3 LPRA see. 8613. En específico, este artículo requiere:
(a) El otorgamiento de un contrato de servicios profesiona-les o consultivos entre un contratista y el Gobierno deberá ser prospectivo. Toda entidad gubernamental pagará únicamente por servicios rendidos.
(b) Debe formalizarse por escrito e incluirse en el texto del mismo la disposición legal que faculta a la entidad guberna-mental a otorgar contratos. (Énfasis suplido). íd.
El resto de los incisos de esta disposición legal detalla la información que debe contener el contrato sobre el contra-tista, los servicios que prestará, la vigencia del contrato, la cuantía máxima a pagarse y la forma de pago. íd. Más adelante, el Art. 5 de la misma ley, 3 LPRA see. 8615, re-quiere que se incluya en el contrato una lista extensa de cláusulas mandatorias.
Vemos, pues, que la Ley Núm. 237-2004 establece que todo contrato gubernamental de servicios profesionales o consultivos, categoría que incluye la prestación de servicios legales, solo será válido si se hace constar por escrito y tiene vigencia prospectiva. Sin lugar a dudas, la Ley Núm. 237-2004 prohíbe la contratación verbal y retro-activa de servicios profesionales y consultivos.
E. Jurisprudencia sobre contratación gubernamental
Por nuestra parte, hemos reiterado que, para que un contrato entre un ente privado y el Estado tenga *460 efecto vinculante entre las partes, este debe constar por escrito. Cordero Vélez v. Mun. de Guánica, 170 DPR 237, 248 (2007); Municipio Mayagüez v. Lebrón, 167 DPR 713, 719-720 (2006). Este requisito tiene que cumplirse “sin excepción alguna”. (Énfasis en el original). Fernández & Gutiérrez v. Mun. San Juan, 147 DPR 824, 833 (1999), citando a Hatton v. Mun. de Ponce, 134 DPR 1001 (1994).
De hecho, en ALCO Corp. v. Mun. de Toa Alta, 183 DPR 530 (2011), nos enfrentamos a una controversia donde un contratista comenzó a prestar sus servicios sin todavía obtener un contrato escrito, terminó su trabajo y, posteriormente, las partes otorgaron el contrato escrito. Id. Una vez el contratista intentó cobrar su acreencia al mu-nicipio, acudió sin éxito al foro judicial. Id. Llegado el caso ante nuestra consideración, rechazamos tajantemente la validación de contratos verbales municipales mediante el otorgamiento por escrito de contratos formales retro-activos. íd., pág. 540. Concluimos que realizar una obra antes de tener un contrato escrito viola las normas de con-tratación gubernamental. Id. Además, razonamos que validar un contrato retroactivamente fomentaría la corrup-ción, pues un contratista podría realizar la obra antes de otorgar el contrato escrito para presionar su otorgamiento futuro, ya sea por la administración de turno o la siguiente. Id., pág. 543.
Asimismo, resolvimos recientemente que la contratación retroactiva sobre el arrendamiento de un bien viola la normativa sobre contratación gubernamental. Jaap Corp. v. Depto. Estado et al., supra. En este caso, expresamos que
[...] la contratación gubernamental retroactiva hace inope-rante todo control previo a la formación de una obligación del Gobierno, lo cual es contrario a la política pública establecida en el Art. 2(e) de la Ley Núm. 230, supra. Esta práctica im-pide, además, que terceros como la Oficina del Contralor cum-plan con la política pública de la Ley Núm. 230 y que los ciu- *461 dadanos puedan obtener el contrato escrito para pasar juicio sobre la contratación, pues el contrato se escribe y publica luego de la ejecución y consumación de las obligaciones allí dispuestas. (Enfasis en el original). íd., pág. 748.
Así, hemos reiterado que las partes que contra-tan con cualquier entidad gubernamental sin cumplir con los requisitos de contratación gubernamental se arriesgan a asumir la responsabilidad por sus pérdidas. Quest Diagnostics v. Mun. San Juan, 175 DPR 994, 1002 (2009); Colón Colón v. Mun. de Arecibo, 170 DPR 718, 728-729 (2007). Ello, pues hemos rechazado consecuentemente la aplicación de cualquier remedio en equidad, como el enriquecimiento injusto, para convalidar la obligación pública sin contrato escrito y así indemnizar los daños sufridos por una parte privada al no cumplir con estos requisitos. ALCO Corp. v. Mun. de Toa Alta, supra, pág. 552; Las Marías v. Municipio San Juan, 159 DPR 868, 875 (2003).
F. Registro en la Oficina del Contralor
Además de la clara exigencia de que el contrato gubernamental conste por escrito y sea prospectivo, el Art. 1 de la Ley Núm. 18-1975 (2 LPRA sec. 97(a)) dispone, en lo pertinente, lo siguiente:
Las entidades gubernamentales y las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción al-guna, mantendrán un registro de todos los contratos que otor-guen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o la enmienda.
Al interpretar esta disposición, resumimos que la sana administración pública requiere que los contratos con el Gobierno cumplan con los requisitos siguientes: (1) se reduzcan a escrito; (2) se mantenga un registro fiel con miras a establecer su existencia prima facie; (3) se remita copia a la Oficina del Contralor como medio de una doble *462 constancia de su otorgamiento, términos y existencia, y (4) que se acredite la certeza de tiempo, es decir, haber sido realizado y otorgado 15 días antes. CMI Hospital v. Depto. Salud, 171 DPR 313, 320 (2007); Ocasio v. Alcalde Mun. de Maunabo, 121 DPR 37, 54 (1988).
Además, hemos señalado que es evidente la intención del legislador de crear mediante esta pieza legislativa un mecanismo de cotejo y publicidad de los contratos gubernamentales. CMI Hospital v. Depto. Salud, supra; Fernández & Gutiérrez v. Mun. San Juan, supra, pág. 830. Estas disposiciones rigurosas responden al interés del Estado de prevenir el despilfarro, la corrupción y el amiguismo en la contratación gubernamental y así promover una administración pública sana y recta. Id.
Posteriormente, la Ley Núm. 127-2004 enmendó el Art. 1 de la Ley Núm. 18-1975 para aclarar que el incumplimiento con el requisito de registrar y remitir un contrato a la Oficina del Contralor de Puerto Rico puede ser subsanado y no acarrea la nulidad del mismo. Colón Colón v. Mun. de Arecibo, supra, págs. 727-729; Lugo v. Municipio Guayama, 163 DPR 208, 219 (2004). En cambio, se dispuso que incumplir con este requisito tiene como efecto prohibir el desembolso de fondos públicos o que se requirieran servicios hasta tanto estos se registren conforme a la ley y la reglamentación aplicable. Id.
Sin embargo, hemos reiterado que estos cambios radicales en la normativa jurisprudencial sobre contratación gubernamental “no tienen el efecto de alterar la política pública establecida en nuestro ordenamiento jurídico a los efectos de que la buena administración de un gobierno conlleva el realizar sus funciones como comprador con la mayor eficacia a los fines de proteger los intereses y el dinero del pueblo”. (Enfasis en el original). Lugo v. Municipio Guayama, supra, pág. 219. Véase, además, Colón Colón v. Mun. de Arecibo, supra. En particular, aclaramos que
*463 [...] la Ley Núm. 127 enmendó la Ley Núm. 18 para establecer que la no remisión de copia de un contrato municipal ante la Oficina del Contralor de Puerto Rico o la falta de registro de éste en los libros del municipio, no viciaba de nulidad el con-trato suscrito. Ello no comporta, como concluye el foro apela-tivo intermedio, que el mismo principio aplique cuando de lo que se trata es de un acuerdo que nunca se redujo a escrito. Somos del criterio que la Ley Núm. 127 no contempló este escenario.
Existe una marcada diferencia entre unos requisitos y otros. La exigencia de que un contrato suscrito se anote en la bitácora municipal y su copia se remita a la Oficina del Contralor de Puerto Rico va encaminada a ofrecerle publicidad, frente a terceros, a la contratación municipal. De esta forma los terce-ros pueden fiscalizarla. Sin embargo, exigir que los contratos suscritos se reduzcan a escrito tiene una insoslayable dimensión de sana administración pública, en la medida que permite salvaguardar los intereses de las partes contratantes frente a un incumplimiento, permite la ordenada utilización de los fondos municipales, evita la incertidumbre en la confección del presupuesto municipal y hace posible la adecuada identificación de la partida contra la cual se harán los desem-bolsos públicos en cumplimiento con la ley. Es decir, los prime-ros son más que nada de carácter procesal y de ordenada tramitación, mas el último es sustantivo por su directa relación con la sana administración pública. En atención a lo cual, debemos concluir que el incumplimiento con el requisito de reducir a escrito el contrato municipal por fuerza afecta adversa-mente la eficacia de las obligaciones contraídas. (Enfasis suplido). Colón Colón v. Mun. de Arecibo, supra, págs. 729-730.
G. Orden ejecutiva
Los foros inferiores también fundamentaron su decisión en la Orden Ejecutiva OE-2006-23, infra, para ordenar al Estado a suscribir con el demandante un contrato con vi-gencia retroactiva para cubrir los servicios profesionales prestados durante el año fiscal 2006-2007, registrarlo en la Oficina del Contralor y pagar al abogado los servicios prestados. Examinemos la normativa aplicable sobre las órdenes ejecutivas.
En primer lugar, es menester señalar que la facultad del Gobernador para emitir órdenes ejecutivas no *464 está regulada, justificada o explicada por alguna disposición estatutaria o constitucional. W. Vázquez Irizarry, Los poderes del gobernador de Puerto Rico y el uso de órdenes ejecutivas, 76 Rev. Jur. UPR 951, 1020 (2007). Por nuestra parte, hemos sido claros al reiterar que las órdenes ejecu-tivas emitidas por el Primer Ejecutivo no pueden contrave-nir las leyes aplicables. Véase Otero de Ramos v. Srio. de Hacienda, 156 DPR 876, 892 (2002), citando a Soto v. Adm. Inst. Juveniles, 148 DPR 810 (1999).
Al respecto, el Prof. William Vázquez Irizarry sostiene que el caso clásico en que el uso de este mecanismo menos-caba la función legislativa es cuando “la orden ejecutiva que pretenda lograr objetivos que han sido rechazados de forma manifiesta por el poder legislativo, por lo que la única base legal que podría sustentar la pretensión del Go-bernador son sus poderes constitucionales o bien un re-clamo de poderes inherentes”. Vázquez Irizarry, supra, pág. 1047. Valga destacar que la See. 4 del Art. IV de nues-tra Constitución no confiere al Primer Ejecutivo el poder de reglamentar la contratación gubernamental con entes privados. Véase Art. IV, Sec. 4, Const. ELA, LPRA, Tomo 1.
Una orden ejecutiva también podría menoscabar el pro-ceso de reglamentación administrativa. Vázquez Irizarry, supra, pág. 1051. Este tipo de reglamentación es una fun-ción clásica que tienen los foros administrativos cuando la Legislatura les ha delegado autoridad para reglamentar, en cuyo caso aplicarían los términos procesales dispuestos en la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU), Ley Núm. 170 de 12 de agosto de 1988 (3 LPRA sees. 2101-2201). íd. En este contexto, el uso de órdenes ejecutivas podría pre-sentar problemas en la medida en que pretenda establecer reglas que afectan derechos de terceros sin contar con la legitimidad que imprimen los requisitos de participación ciudadana dispuestos por la LPAU. Id., pág. 1053. En lo pertinente, el profesor Vázquez Irizarry asevera lo si-guiente:
*465 Se puede aducir que este problema no debiera existir puesto que uno de los principios que definen el uso de las órdenes ejecutivas, es que las mismas son mandatos de aplicación “dentro de la rama ejecutiva”, por lo que no hay terceros que se puedan ver afectados. Lo cierto, sin embargo, es que algu-nas órdenes procuran establecer programas o políticas públi-cas a un nivel de detalle que sitúa sus efectos muy cerca de la ciudadanía. Ese es el caso de las órdenes que aunque están dirigidas a entidades públicas, afectan las relaciones que éstas tienen con terceros, particularmente en el ámbito de la adqui-sición de bienes o servicios. (Énfasis suplido). íd., pág. 1054.
En el caso de epígrafe, los foros inferiores fundamenta-ron sus respectivos dictámenes en la “Orden ejecutiva del Gobernador del Estado Libre Asociado para reglamentar el pago por servicios prestados a las agencias e instrumenta-lidades de la Rama Ejecutiva sin mediar un contrato formal debidamente registrado en la Oficina del Contralor”, Orden Ejecutiva OE-2006-23 (Orden Ejecutiva) firmada por el entonces gobernador Aníbal Acevedo Vilá el 22 de junio de 2006. En específico, se basaron en que la exposi-ción de motivos de la Orden Ejecutiva establece que “[e]l mero hecho que un servicio se haya prestado de acuerdo con un entendido verbal entre el ELA y el contratista no impide que el ELA decida reducir tal acuerdo a escrito pos-teriormente y honrar el pago justo por los servicios prestados”. Orden Ejecutiva, pág. 3.
Como hemos visto, si bien el Gobernador tiene la facul-tad de emitir órdenes ejecutivas como parte de los poderes que le confieren las leyes o de los poderes inherentes a su cargo, este no puede emitir órdenes ejecutivas de forma contraria a lo dispuesto por ley. Otero de Ramos v. Srio. de Hacienda, supra. La Ley Núm. 237-2004 exige que todo contrato gubernamental de servicios legales se haga por escrito y con vigencia prospectiva. Es decir, esta ley prohíbe la contratación verbal de estos servicios, así como la contratación por escrito con vigencia retroactiva. De igual forma, la Ley Núm. 230-1974 requiere que los contratos gubernamentales consten previamente por escrito para ser *466 válidos. Asimismo, la exigencia de que el contrato sea re-gistrado en la Oficina del Contralor establecida por la Ley Núm. 18-1975 supone que este conste por escrito y sea prospectivo.
Por otro lado, la Asamblea Legislativa no ha delegado a ninguna agencia administrativa el poder de reglamentar normas nuevas de contratación gubernamental que vayan en contra de lo establecido en las disposiciones legales dis-cutidas en los acápites anteriores. Consiguientemente, la Orden Ejecutiva es inválida en la medida que permite va-lidar contratos verbales con el Estado mediante contratos formales retroactivos, contrario a lo dispuesto por ley.
III
En el caso de epígrafe, no está en controversia que las partes nunca suscribieron un contrato escrito para el año fiscal 2006-2007. Como expusimos, las leyes citadas, así como su jurisprudencia interpretativa, prohíben el desem-bolso de fondos públicos por servicios prestados sin que medie previamente un contrato gubernamental válido que cumpla con todos los requisitos estrictos sobre contratación gubernamental. Incluso, disponen que todo contrato que no se formalice conforme a estas normas es nulo. Asimismo, vimos que la Orden Ejecutiva que permitiría validar retro-activamente el contrato en cuestión, es inválida porque contraviene las leyes sobre contratación gubernamental.
Por último, hemos sido consecuentes en rechazar firmemente la aplicación de cualquier remedio en equidad para convalidar la obligación pública verbal y poder indemnizar a la parte privada los daños sufridos por prestar sus servicios sin cumplir con las normas de contratación guberna-mental. Véanse: ALCO Corp. v. Mun. de Toa Alta, supra; Las Marías v. Municipio San Juan, supra.
Al aplicar este marco normativo al caso ante nuestra consideración, es forzoso concluir que la reclamación del *467 licenciado Rodríguez Ramos no es exigible. Este prestó sus servicios legales conociendo que no existía un contrato es-crito que vinculara al Estado. Siendo así, el contrato verbal en el cual pretende basar su reclamación es nulo. Ante esta realidad, tampoco procede aplicar remedio en equidad alguno. El licenciado Rodríguez Ramos se arriesgó a asumir la responsabilidad por sus pérdidas, tal y como hemos advertido a todo aquel que contrata con cualquier entidad gubernamental sin cumplir con los requisitos de contrata-ción gubernamental. Véanse: Quest Diagnostics v. Mun. San Juan, supra; Colón Colón v. Mun. de Arecibo, supra.
Por lo tanto, los foros inferiores erraron al ordenar a la DTOP y la ACT a suscribir un contrato con vigencia retro-activa para cubrir los servicios profesionales prestados du-rante el año fiscal 2006-2007, registrarlo en la Oficina del Contralor y pagar al abogado los servicios prestados du-rante dicho periodo.
IV
Por los fundamentos antes expuestos, se revoca la sen-tencia emitida por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Pabón Charneco emitió un voto particular de conformidad, al cual se unió el Juez Asociado Señor Rivera García. La Juez Asociada Señora Rodrí-guez Rodríguez no intervino.